

**FILED**
DEC 1 9 2005
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES RUSSELL RHINES, | ) | CIV. 00-5020-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING MOTION |
| | ) | FOR STAY AND ABEYANCE |
| DOUGLAS WEBER, Warden, South Dakota State Penitentiary | ) ) ) | |
| | ) | |
| Respondent. | ) | |

**PROCEDURAL HISTORY**

Petitioner, Charles Rhines, was convicted of premeditated first-degree murder and third-degree burglary. On January 26, 1993, a jury sentenced him to death by lethal injection. Petitioner appealed his conviction and sentence to the South Dakota Supreme Court. Fourteen issues were raised on direct appeal, including the excuse of prospective juror Diane Staeffler, the state's use of its peremptory challenges, the use of victim impact testimony, and the proportionality review. The South Dakota Supreme Court affirmed petitioner's conviction and sentence and the United States Supreme Court denied further review on December 2, 1996.

Petitioner then applied for a writ of habeas corpus in state court on December 5, 1996. In his state habeas, petitioner raised numerous issues, including ineffective assistance of counsel, the excuse for cause of prospective

juror Diane Staeffler, and the constitutionality of the South Dakota capital punishment statutes. Rhines's state habeas was denied by the trial court on October 8, 1998. The South Dakota Supreme Court affirmed the denial on February 9, 2000.

On February 22, 2000, Rhines filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. An amended petition for writ of habeas corpus was filed on November 20, 2000, that alleged thirteen grounds for relief. Respondent, Douglas Weber, alleged that several of the grounds had not been exhausted and were, therefore, procedurally defaulted. On July 3, 2002, this court found that petitioner's grounds for relief Two(B), Six(E), Nine(B), (H), (I), and (J), Twelve, and Thirteen were unexhausted. This court stayed the petition pending exhaustion of Rhines's state court remedies on the condition that Rhines file a petition for habeas review in state court within 60 days and return to federal court within 60 days of completing the state proceedings. The state appealed.

On direct appeal, the Eighth Circuit Court of Appeals vacated the stay and remanded the case so this court could determine whether Rhines could proceed by dismissing the unexhausted claims from his petition. Rhines v. Weber, 346 F.3d 799 (8th Cir. 2003). The United States Supreme Court granted certiorari to determine whether a district court may issue an order of stay and abeyance in a mixed petition for habeas corpus, that is, a petition containing exhausted and unexhausted claims. Rhines v. Weber, 125 S. Ct.

2

1528, 1532, 161 L. Ed. 2d 440 (2005). The Court held that stay and abeyance is permissible under some circumstances. Rhines, 125 S. Ct. at 1535. The Court remanded the case to the Eighth Circuit Court of Appeals so it could determine whether this court abused its discretion in granting the stay. Id. at 1535-36.

Because this court did not have the benefit of the controlling Supreme Court authority when it issued the order of stay and abeyance in 2002, the Eighth Circuit Court of Appeals remanded the case to this court to analyze the petition for writ of habeas corpus under the new test enunciated in Rhines. Rhines v. Weber, 409 F.3d 982, 983 (8th Cir. 2005). This court was directed to analyze each unexhausted claim to: (1) determine whether Rhines had good cause for his failure to exhaust the claims in state court, (2) determine whether the claims were plainly meritless, and (3) consider whether Rhines had engaged in abusive litigation tactics or intentional delay. Id. (citing Rhines, 125 S. Ct. at 1535). The court finds that Rhines had good cause for failing to exhaust the claims, the claims are not plainly meritless, and Rhines has not engaged in abusive litigation tactics. Accordingly, his petition for habeas corpus is stayed pending exhaustion in state court.

**DISCUSSION**

1. **Good Cause**

Rhines contends that he has good cause for his failure to exhaust his claims in state court because his post-conviction counsel was ineffective. Respondent argues that alleged ineffective assistance of counsel cannot serve as good cause for failure to exhaust his claims in state court, just as ineffective assistance of counsel is not good cause to excuse a procedural default. The Supreme Court did not define "good cause" in Rhines.

The only other Supreme Court decision to reference the term "good cause" in the stay and abeyance context is Pace v. DiGuglielmo, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). In Pace, the Court held that a state postconviction filing rejected by the state court as untimely was not properly filed within the meaning of § 2244(d)(2). Id. at 1814. The petitioner argued that the court's timeliness interpretation was unfair because a petitioner trying in good faith to exhaust his state court claims might litigate for several years only to find out that his claim had never been properly filed. Id. at 1813. Thus, his federal petition for habeas relief would be time barred. Id. In response, the court noted that "[a] prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." Id. The Supreme Court recognized that "petitioner's reasonable

confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." Id.

In the present case, Rhines initially filed a pro se federal habeas corpus petition leaving "more than eleven months left before the expiration of the limitations period." Rhines, 125 S.Ct. at 1532. He also filed a pro se "Motion to Toll Time" because he was concerned about the one-year statute of limitations contained in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). In response to the Motion to Toll Time, respondent advised the court that Rhines "has had a maximum of fourteen days (more likely eight days) that have run against the statute of limitations in Section 2244. Since petitioner is in no danger of losing his right to file for federal habeas corpus relief, there is no reason to toll the time of the statute of limitations." State's Response to Petitioner's Motion to Toll Time (filed June 2, 2000) at p. 4. Relying on respondent's representations, the court denied Rhines's motion to toll time.

Rhines followed the procedure that was subsequently articulated in Pace, namely he filed a protective petition in federal court and asked the federal court to stay and abey the federal habeas proceeding, stating that he was concerned about complying with the one-year statute of limitations in the AEDPA. The court finds that Rhines was reasonably confused about whether his claims had been properly exhausted in state court and thus he has shown "good cause" for his failure to exhaust his unexhausted claims.

5

In the alternative, the court finds that under the circumstances of this case, Rhines meets the "good cause" requirement due to the ineffective assistance of his post-conviction counsel. The Eighth Circuit Court of Appeals has not addressed the issue of "good cause" in the stay and abeyance context. District courts faced with the stay and abeyance question since the Rhines decision have split on whether alleged ineffective assistance of post-conviction counsel constitutes good cause for failure to exhaust claims in state proceedings.[1] Without much discussion, at least four district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did constitute good cause for failure to exhaust claims in state proceedings. See e.g., Ramchair v. Conway, 2005 WL 2786975 at *16 (E.D.N.Y. 2005); Boyd v. Jones, 2005 WL 2656639 at *4 (E.D. Mich.); Fradiue v. Pliler, 2005 WL 2204862 (E.D. Cal. 2005); and Martin v. Warren, 2005 WL 2173365 (E.D. Mich. 2005). Similarly, and again with limited discussion, at least two district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did not constitute good cause. See, e.g., Vasquez v. Parrott, 2005 WL 2864703 at *10 (S.D.N.Y. 2005); Hubbert v. Renico, 2005 WL 2173612 at *3 (E.D. Mich. 2005).

---

[1]District courts have also found good cause where the petitioner may have been mentally incompetent, Shotwell v. Lamarque, 2005 WL 1556296 (E.D. Cal. 2005), or was unrepresented by counsel, Coulter v. Mullins, 2005 WL 2487980 (W.D. Okla. 2005), Rogers v. Carey, 2005 WL 1366451 (E.D. Cal. 2005).

6

Respondent, relying on Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) and Murray v. Carrier, 477 U.S. 478, 490-492, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), contends that the court should apply the same principles to "good cause" in the stay and abey context as has been applied to show "cause" under the "cause and prejudice" standard in the procedural default arena; namely, that ineffective assistance of post-conviction counsel is not grounds for relief from a procedural default unless it violates the Federal Constitution. The Supreme Court recognized that "[t]he procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism[.]'" Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000) (quoting Coleman, 501 U.S. at 730). The failure of a habeas petitioner to meet the State's procedural requirements deprives the state courts of an opportunity to reach the issues in the first instance. Id. But unlike the procedural default situation where a petitioner is barred from presenting his claim to state courts, Rhines is not barred from presenting his claim to the state court. Thus, the principles of comity and federalism would be given full recognition if the court allowed Rhines to exhaust his unexhausted claims in state court. As a result, the underlying concern of applying the principles of comity and federalism that result in requiring a petitioner to show that the assistance of counsel was so ineffective as to

violate the Federal Constitution does not exist, because petitioner can present his claims to state court.

Moreover, this court believes that the Supreme Court suggested a more expansive definition of "good cause" in Pace and Rhines than the showing needed for "cause" to excuse a procedural default. See Pace 125 S. Ct. at 1814. In Pace, the Supreme Court acknowledged that "reasonable confusion" about timeliness was sufficient to meet the cause requirement. Reasonable confusion on the part of a petitioner is less stringent than acts that have been found sufficient to establish cause for procedural default. See Carrier, 477 U.S. at 488 (a showing that the factual or legal basis for a claim was not available to counsel or that "some interference by officials" made compliance impracticable would constitute cause).

In this case, there is nothing in the record to indicate that Rhines's allegations of ineffective assistance of counsel are frivolous or that Rhines should have been aware that his post-conviction counsel should have raised the issues on appeal. See Ramchair, 2005 WL 2786975 at *16. Permitting Rhines to return to state court to exhaust his remedies and present his ineffective assistance of counsel argument complies with the principles of comity and federalism that underlie the exhaustion doctrine. See Edwards, 529 U.S. at 451. Furthermore, the exhaustion doctrine was not intended to unreasonably impair the petitioner's right to relief. Rhines, 125 S. Ct. at 1536.

Respondent contends that if ineffective assistance on state habeas is sufficient grounds for good cause, then every petitioner who merely alleges ineffective assistance of his prior attorney will get stay and abeyance. Respt.'s Br. 7. The Rhines test, however, requires the court to dismiss a motion for stay and abeyance where the petitioner engages in abusive litigation tactics or intentional delay, even if he has good cause and potentially meritorious claims. Rhines, 125 S. Ct. at 1535. Because the court believes that Rhines's allegations of ineffective assistance of counsel are analogous to the "reasonable confusion" about timeliness cited in Pace, the court finds good cause exists to excuse Rhines's failure to exhaust his claims in state court.

### 2. Potential Merit Analysis

Even if Rhines has good cause to excuse failure to exhaust his claims in state court, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines, 125 S. Ct. at 1535 (citing, with the cf. signal, 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") If the claims are "potentially meritorious" the court should grant the stay. Id. Pursuant to § 2254(b)(2), a court may decide an unexhausted issue on the merits because the "exhaustion rule is not a rule of jurisdiction, and sometimes 'the interests of

comity and federalism [are] better served by addressing the merits.'" Padavich v. Thalacker, 162 F.3d 521, 522 (8th Cir. 1998) (quoting Granberry v. Greer, 481 U.S. 129, 134, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987)).

### a. Ground Two(B)—Allegedly Improper Exclusion of Prospective Juror Jack Meyer

Rhines's amended petition alleged that his rights to due process, an impartial jury, and equal protection were violated by the trial court's exclusion of prospective juror Jack Meyer. The trial court excluded him for cause because he indicated that he was opposed to the death penalty.

Prospective jurors may be excluded for cause because of their views on capital punishment if their views would prevent or substantially impair the performance of their duties as a juror in accordance with the jury instructions. Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841, (1985). "[A] sentence of death[, however,] cannot be carried out if the jury that imposed or recommended it was chosen by excluding venire men for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Davis v. Georgia, 429 U.S. 122, 123, 97 S. Ct. 399, 50 L. Ed. 2d 339 (1976). Having reviewed the transcript of Meyer's voir dire, the court finds that this claim is not plainly meritless.

### b. Ground Six (E)—Alleged Unconstitutionality of the South Dakota Death Penalty Statute

Rhines contends that South Dakota's application of its death penalty statutes violates his right to due process, equal protection, and constitutes cruel and unusual punishment. Under South Dakota law, a sentence of death or life imprisonment are the only sentences permitted for Class A felonies. SDCL 22-6-1. SDCL 23A-27A-1 provides that "in all cases for which the death penalty may be authorized, the judge shall consider, or shall include in instructions to the jury for it to consider, any mitigating circumstances and any of the following aggravating circumstances which may be supported by the evidence." The statute enumerates ten aggravating factors, including a finding that the defendant committed the crime for money or that the crime was outrageously vile or inhuman. Id. Rhines contends that the statute is unconstitutional as applied because South Dakota does not treat all Class A felonies as death penalty cases.

Respondent contends that Rhines's claim is plainly meritless because SDCL 23A-27A-1 is identical to the statute upheld in Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Whether the statutes are identical is not the issue, however, because Rhines is challenging the application of the statute. In Gregg, the Court held that "the death penalty is not a form of punishment that may never be imposed." Id. at 187. The death

11

penalty is acceptable as long as it is not imposed in an arbitrary and capricious manner. Id. at 195. Because Rhines has alleged that the death penalty was applied arbitrarily, the court finds that he has made a colorable federal claim. Thus, the court finds that his claim is not plainly meritless. See Rhines, 125 S. Ct. at 1535.

### c. Grounds Nine(B), (H), (I), and (J)—Alleged Ineffective Assistance of Trial Counsel

In Ground Nine (B), Rhines alleges that his trial counsel were ineffective for their "tepid" presentation of evidence during the penalty phase, including their failure to call John Fousek, James Mighell, and Connie Royer as witnesses who would have provided helpful testimony. In Ground Nine (H), Rhines contends that his counsel missed erroneous and highly prejudicial testimony from Glen Wishard. Rhines alleges in Ground (I) that his attorney failed to consult with a mitigation expert. In Ground (J), Rhines alleges that his counsel failed to object to irrelevant and prejudicial testimony that Rhines had access to a gun, and testimony about Rhines's statements at the victim's funeral.

Rhines must show that his attorneys' performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of their substandard performance. Strickland v. Washington, 466 U.S. 668, 688-692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A counsel's errors

must be so serious that the conviction or sentence is unreliable. Id. at 687. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Id. at 689.

Respondent argues that Rhines's ineffective assistance of counsel claims are plainly meritless because Rhines did not allege that he was prejudiced by his attorneys' alleged errors. Rhines contends that by citing to Strickland he has alleged prejudice and that the alleged prejudice is obvious. The court understands Rhines's habeas petition to allege prejudice because he relied on Strickland and because the court can infer from the context of his habeas petition that Rhines is alleging that he would not have been sentenced to death but for the ineffective assistance of his trial counsel.

While Rhines faces an uphill battle in a state habeas proceeding under the deferential Strickland standard, the court finds that these claims are not plainly meritless. If Rhines can prove his allegations, a court could find that his counsel's performance fell below the objective standard for reasonableness and that he was prejudiced as a result. For example, in Austin v. Bell, 126 F.3d 843, 849 (6th Cir. 1997), the court found that failure to call available witnesses to testify at sentencing was ineffective assistance of counsel, as Rhines alleged in Ground Nine(B). In Harries v. Bell, 417 F.3d 631, 638 (6th Cir. 2005), the court found that petitioner's counsel was

13

ineffective for failing to properly investigate mitigating evidence and rebut aggravating evidence, as Rhines alleged in Ground Nine(I). Depending on the nature of the prejudicial evidence or testimony in Ground Nine(H) and (J), failure to object could qualify as an error so serious that the conviction or sentence is unreliable. See Strickland, 466 U.S. at 687. Accordingly, Rhines' ineffective assistance of counsel claims are not plainly meritless.

### d.     Ground Twelve—Alleged Prosecutorial Misconduct

Rhines alleges that the prosecution violated his right to due process and equal protection by (1) claiming that the victim's hands were tied before the fatal stabbing, when they were actually tied after Rhines killed the victim; (2) claiming that the victim was "gutted" when there was no such evidence; (3) using false testimony from witness Glen Wishard; and (4) excluding all jurors with misgivings about the death penalty.

"The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Conroy, 424 F.3d 833, 840 (8th Cir. 2005) (quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985)). "There are numerous cases in which courts have censured prosecutors for improper statements or conduct but nevertheless have affirmed the conviction because the misconduct was

found, in the context of the whole trial, not to be prejudicial." Hernandez, 779 F.2d 456 at 458-59.

Respondent contends that the claims related to the first three issues are plainly meritless because Rhines did not allege that he was prejudiced by the prosecution's alleged misconduct. Respondent contends that even if Rhines did allege prejudice, the errors are minor compared to his explicit confession to the killing.

As in the court's analysis of the ineffective assistance of counsel claim, it is apparent from the context that Rhines is claiming that the alleged misconduct led the jury to sentence him to death, thereby prejudicing him. The alleged misconduct is related to the "outrageously or wantonly vile, horrible, or inhuman" aggravating factor found in SDCL 23A-27A-1. If proven true, prosecutorial misconduct regarding evidence or testimony may be grounds to overturn a sentence, and the state court should have the opportunity to hear the claim. This claim is not plainly meritless.

### e. Ground Thirteen—Rhines's Absence During Jury Note Consideration

Rhines alleges that he was absent during the court's consideration of a juror question in violation of the Fifth, Sixth and Fourteenth Amendments. The constitutional right to presence is rooted in the Confrontation Clause of the Sixth Amendment, but the Supreme Court has also recognized a due

process right in some situations where the defendant is not confronting witnesses or evidence against him. United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). A defendant has a due process right to be present "whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (citation omitted). The propriety of the exclusion of the defendant must be considered in light of the whole record. Id.

In Gagnon, the Court held that the trial judge's in camera questioning of a juror did not violate the defendants' due process rights because they could not have done anything or gained anything by being present. 470 U.S. at 526-27. Nor was their presence necessary to ensure fundamental fairness or a reasonably substantial opportunity to defend against the charge. Id. at 527.

In the case at bar, the jury wrote a nine-part question seeking clarification of the definition of a sentence of life in prison without parole. Ct. Ex. 5. The jury asked what Rhines's daily routine in prison would be like. Id. For example, the jury wanted to know whether Rhines would ever be given work release or conjugal visits, allowed to mix with the general prison population, or allowed to watch TV and listen to music. Id. Judge John K.

16

Konenkamp considered the matter in chambers and offered counsel for both sides the opportunity to comment on his proposed answer. Jury Trial Tr. Vol. XIII at 2697. The jury was not present. Id. His proposed response was "Dear Jurors: I acknowledge your note asking questions about life imprisonment. All the information I can give you is set forth in the jury instructions. Dated this 26th day of January, 1993, signed by the Court." Joseph Butler, counsel for Rhines, objected on the basis of completeness and suggested that Judge Konenkamp instruct the jury that they could not base their decision on speculation or guesswork. Id. at 2699.

Judge Konenkamp overruled the defendant's objections, and answered the jury note with his own note written as he had originally proposed. Jury Trial Tr. Vol. XIII at 2700-01. The court noted that each juror acknowledged during voir dire that he or she understood that a sentence of life without parole meant life without parole, and that the jury instructions said the same thing. Id. at 2700. Thus, no further instructions were necessary. Id. at 2700.

Like in Gagnon, Rhines's presence could not have made any difference. His attorneys were present at the time and argued on his behalf. The jury was not present during the hearing and Rhines's absence could not have made any difference in the jury's decision to sentence him to death. The note dealt with a purely legal matter and the judge had already given the jury the

17

definition of life without parole. Thus, Rhines's presence did not have a reasonably substantial relation to his ability to defend against the charge and was not necessary to ensure fundamental fairness. Even if Rhines's allegations that he was absent during the hearing are true, this could not have violated his constitutional rights. Accordingly, the court finds the claim plainly meritless.

### 3.    Intentionally Dilatory Litigation Tactics

The South Dakota Supreme Court denied Rhines's state habeas appeal on February 9, 2000. Rhines petitioned this court for habeas relief on February 22, 2000. After this court issued its order dated July 3, 2002, granting Rhines a stay pending exhaustion of the unexhausted claims in state court contingent upon Rhines commencing state court exhaustion proceedings within 60 days, Rhines did so. His petition was filed in state court on August 22, 2002. Because Rhines filed the habeas petition less than a month after the state habeas proceedings were complete, and he filed his state court petition to exhaust the unexhausted claims in 50 days, the court finds that Rhines has not engaged in intentionally dilatory litigation tactics.

After considering the three factors articulated by the Supreme Court in Rhines, the court finds that Rhines has good cause for his failure to exhaust, his unexhausted claims are not plainly meritless, and there is no indication

18

that he engaged in intentionally dilatory litigation tactics. Thus, Rhines is entitled to have his petition stayed pending exhaustion of the potentially meritorious claims. Because the petition has already been filed in state court, the only question remaining for this court to decide is the amount of time within which Rhines will have to return to this court following completion of state court exhaustion. In <u>Rhines</u>, the Supreme Court referenced approvingly a 30-day time period. As a result, this court will adopt that 30-day time period.

Based on the foregoing discussion, it is hereby

ORDERED that Rhines shall have 15 days to notify this court whether he intends to dismiss Ground Thirteen. If Ground Thirteen is not dismissed, the court will dismiss this petition as a mixed petition.

IT IS FURTHER ORDERED that the petition for habeas corpus is stayed pending exhaustion of Grounds Two(B), Six (E), Nine(B), (H), (I), (J), and Twelve in state court, conditioned upon petitioner returning to this court within 30 days of completing such exhaustion.

Dated December 19, 2005.

BY THE COURT:

*[signature]*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE