UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHARLES RUSSELL RHINES,<br><br>Petitioner,<br><br>vs.<br><br>DARIN YOUNG, Warden, South Dakota State Penitentiary;<br><br>Respondent. | 5:00-CV-05020-KES<br><br>ORDER DENYING MOTION FOR ABEYANCE |

Petitioner, Charles Rhines, moves the court for an order staying this proceeding. Darin Young, respondent, resists the motion. For the following reasons, the court denies the motion.

## PROCEDURAL HISTORY

Rhines was convicted of premeditated first-degree murder and third-degree burglary. On January 26, 1993, a jury sentenced him to death by lethal injection. Rhines appealed his conviction and sentence to the South Dakota Supreme Court. Fourteen issues were raised on direct appeal, including the excusal of prospective juror Diane Staeffler, the state's use of its peremptory challenges, the use of victim impact testimony, and the proportionality review. The South Dakota Supreme Court affirmed petitioner's conviction and sentence and the United States Supreme Court denied further review on December 2, 1996.

Rhines then applied for a writ of habeas corpus in state court on December 5, 1996. In his state habeas, Rhines raised numerous issues, including ineffective assistance of counsel, the excusal for cause of prospective juror Diane Staeffler, and the constitutionality of the South Dakota capital punishment statutes. Rhines's state habeas was denied by the trial court on October 8, 1998. The South Dakota Supreme Court affirmed the denial on February 9, 2000.

On February 22, 2000, Rhines filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. An amended petition for writ of habeas corpus was filed on November 20, 2000, which alleged thirteen grounds for relief. Respondent alleged that several of the grounds had not been exhausted and were, therefore, procedurally defaulted. On July 3, 2002, this court found that petitioner's grounds for relief Two(B), Six(E), Nine(B), (H), (I), and (J), Twelve, and Thirteen were unexhausted. This court stayed the petition pending exhaustion of Rhines's state court remedies on the condition that Rhines file a petition for habeas review in state court within 60 days and return to federal court within 60 days of completing the state proceedings. The state appealed.

On direct appeal, the Eighth Circuit Court of Appeals vacated the stay and remanded the case so this court could determine whether Rhines could proceed by dismissing the unexhausted claims from his petition. *Rhines v. Weber*, 346 F.3d 799 (8th Cir. 2003). Rhines filed a petition for certiorari with the United States Supreme Court. The United States Supreme Court granted certiorari to determine whether a district court may issue an order of stay and

abeyance in a mixed petition for habeas corpus, that is, a petition containing exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269 (2005). The Court held that stay and abeyance is permissible under some circumstances. *Id.*, 544 U.S. at 277. The Court remanded the case to the Eighth Circuit Court of Appeals so it could determine whether this court abused its discretion in granting the stay. *Id.* at 279. The Court specifically stated that "once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id.* at 275-76 (emphasis added).

Because this court did not have the benefit of the controlling Supreme Court authority when it issued the order of stay and abeyance in 2002, the Eighth Circuit Court of Appeals remanded the case to this court to analyze the petition for writ of habeas corpus under the new test enunciated in *Rhines*. *Rhines v. Weber*, 409 F.3d 982, 983 (8th Cir. 2005). This court was directed to analyze each unexhausted claim to: (1) determine whether Rhines had good cause for his failure to exhaust the claims in state court, (2) determine whether the claims were plainly meritless, and (3) consider whether Rhines had engaged in abusive litigation tactics or intentional delay. *Id.* (citing *Rhines*, 544 U.S. at 277-28). On December 19, 2005, this court found that Rhines had good cause for failing to exhaust the claims, the claims were not plainly meritless, and Rhines had not engaged in abusive litigation tactics. Docket 150. The court ordered that Rhines's petition for habeas corpus was stayed pending exhaustion in state court. *Id.*

On December 21, 2005, Rhines returned to state court to exhaust his claims. On February 27, 2013, the Circuit Court for the Seventh Judicial Circuit of South Dakota entered judgment in favor of respondent on all of Rhines's claims. Rhines timely requested a Certificate of Appealability from both the state Circuit Court and the Supreme Court of South Dakota, the latter of which was denied on July 17, 2013. In early October of 2013, Rhines filed a petition for certiorari with the United States Supreme Court, which the Court denied on January 21, 2014. Docket 223. On February 4, 2014, this court lifted the stay on Rhines's federal habeas corpus proceeding. Docket 224. Rhines now seeks another stay for a minimum of 180 days. Docket 265.

## DISCUSSION

The decision to stay a proceeding is entrusted to a district court's sound discretion. *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013); *see also Landis v. N. Am. Co.*, 299 U.S. 163, 166 (1936) (". . . the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) does not deprive courts of that authority, although the court's decision to exercise it should be compatible with the objectives of AEDPA. *Rhines*, 544 U.S. at 276 (noting two purposes of the Act are ensuring finality and streamlining federal habeas proceedings).[1] "The proponent of a stay bears

---

[1] The precise holding in *Rhines* applicable to staying mixed habeas petitions does not apply to Rhines's present motion because Rhines makes no

4

the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Rhines seeks an order staying this proceeding for a minimum of 180 days to investigate new ineffective assistance of trial counsel claims based upon the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Anticipating the discovery of those additional claims, Rhines also requests permission to file a second amended habeas corpus petition.

Because the Supreme Court's *Martinez* opinion is intertwined with the doctrine of procedural default, a brief discussion of that doctrine is necessary. Before seeking federal relief under 28 U.S.C. § 2254, a petitioner must "fairly present" the claim to the state courts. *Murphy v. King*, 652 F.3d 845, 848 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.")). As a rule, a federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This rule also serves as a bar to claims raised in federal habeas petitions "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-730. The requirement that prisoners first exhaust their claims in state court "protect[s] the state courts' role in the enforcement of federal law and

---

showing that his federal habeas petition once again asserts non-exhausted state claims.

prevent[s] disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518 (1982). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. 732. "The bar to federal review may be lifted, however, if the prisoner can demonstrate cause for the procedural default in state court and actual prejudice as a result of the alleged violation of federal law." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (quotations omitted).

In *Coleman*, 501 U.S. at 752, the Supreme Court observed that "[t]here is no constitutional right to an attorney in a state post-conviction proceeding." As a consequence, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* And "it is the petitioner who must bear the burden of [habeas counsel's] failure to follow state procedural rules." *Id.* at 754. Thus, a petitioner cannot assert the ineffectiveness of habeas counsel as a cause to excuse a procedurally defaulted claim. *Id.* at 757.

The Supreme Court's *Martinez* opinion created a "narrow exception" that "modif[ies] the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez*, 132 S. Ct. at 1315. Specifically, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* The Court recognized that,

> [T]he initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance

6

> at trial, [thus] the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal to the ineffective-assistance claim. . . . When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.

*Id.* at 1316-17. As a solution to that problem, the narrow exception announced in *Martinez* is met when "(1) the ineffective-assistance claim was a 'substantial' claim;[2] (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-counsel claim.' " *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (quoting *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013)). The Court reiterated the narrowness of its holding, however, and cautioned that the nature of its decision was purely equitable rather than constitutional. *Martinez*, 132 S. Ct. at 1319 (noting several "differences between a constitutional ruling and the equitable ruling of this case.").

Rhines, unlike the petitioner in *Martinez*, is not asserting for the first time in federal habeas a substantial ineffective assistance of trial counsel claim that has been procedurally barred due to the ineffective assistance of state habeas counsel. To the contrary, Rhines has not identified any such claims at all. Rather, Rhines contemplates that such claims may yet be discovered and brought at a later date, thus justifying a stay of this proceeding.

---

[2] A "substantial" ineffective assistance claim is said to be one that has "some merit." *Martinez*, 132 S. Ct. at 1318.

Rhines principally relies on caselaw from the Fourth Circuit in support of his position. In *Gray v. Pearson*, 526 Fed Appx. 331, 332 (4th Cir. 2013), the petitioner was represented by the same counsel in both his state and federal habeas proceedings. The Fourth Circuit noted that the state habeas proceeding was Gray's initial-review collateral proceeding. *Id.* at 334. Relying on *Martinez*, the petitioner argued that independent counsel should be appointed to review and present any ineffective assistance of trial counsel claims overlooked by his state habeas counsel. *Id.* at 332. The court agreed, noting "a clear conflict of interest exists in requiring Gray's [federal habeas] counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented Gray in his state post-conviction proceedings[.]" *Id.* at 334. Thus, the court remanded so that independent counsel could be appointed.

Although *Gray* was an unpublished opinion, the Fourth Circuit subsequently adopted the *Gray* analysis. *Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013) ("Therefore, . . . we adopt *Gray*'s reasoning *in toto*."). In *Juniper*, like in *Gray*, the petitioner was represented by the same counsel in both his state and federal habeas proceedings. *Id.* at 290. Again, the state habeas proceeding was the petitioner's initial-review collateral proceeding. *Id.* at 289. Thus, the Fourth Circuit concluded that the petitioner should be appointed independent counsel due to the same conflict of interest identified in *Gray*. *Id.*

Several district courts in the Fourth Circuit have followed those decisions and, as part of their orders appointing supplemental counsel, also ordered a

8

stay of the proceeding so that new counsel had an opportunity to investigate and assert claims that fell within *Martinez*. *See, e.g.*, *Parker v. Joyner*, No. 5:03-HC-966-H, 2014 WL 6630108 (E.D.N.C. Nov. 21, 2014); *Burke v. Lassiter*, No. 5:12-cv-00137-RLV, Docket 40 (W.D.N.C. 2014).[3]

A similar path has been charted by the Fifth Circuit. *See Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015); *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015). In *Mendoza*, 783 F.3d at 203-24, the court's opinion consisted of a single paragraph remanding the case to the district court to appoint supplemental counsel and to determine if the petitioner could establish cause for the procedural default of his ineffective assistance of trial counsel claims. A concurring opinion provided additional details and noted that, as in *Gray* and *Juniper*, Mendoza's federal and state habeas counsel were the same. *Id.* at 208 (Owen, J., concurring). In *Speer*, 781 F.3d at 787, the court again remanded to appoint supplemental counsel. A footnote indicated that the court's "decision addresses the universe of cases where petitioner's counsel in his federal petition was also his state habeas counsel." *Id.* at 786 n.10. The same judge that filed a concurring opinion in *Mendoza* did so in *Speer* "for the reasons set forth in [her] concurring opinion in" the *Mendoza* case. *Id.* at 787 (Owen, J., concurring).

---

[3] The *Burke* opinion is appended to Docket 269-3. Also appended is an order from *Sigmon v. Byars*, No. 8:13-cv-01399-RBH-JDA, Docket 123 (D.S.C. 2014). Docket 269-4. In *Sigmon*, however, the petitioner identified several ineffective assistance of claims to be included in his amended petition. The state only partially opposed adding those claims, and the district court allowed the petitioner to include them all.

While this court is in no way bound by decisions from the Fourth and Fifth Circuits, those courts have recognized that a conflict of interest can arise when a petitioner's initial-review collateral proceeding counsel and federal habeas proceeding counsel are the same. In those circumstances–and if a petitioner's ineffective assistance claim was not raised in state habeas but should have been–then federal habeas counsel is placed in the ethically impermissible position of having to argue their own effectiveness during the state habeas proceeding. The consequence is that the petitioner's ineffective assistance of trial counsel claims that should have been raised at the initial-review collateral proceeding may never be raised or heard at all. *See Martinez*, 132 S. Ct. at 1316. As a solution, supplemental counsel can be appointed to independently determine whether state habeas counsel rendered ineffective assistance during the initial-review collateral proceeding, thereby causing the petitioner to procedurally default on his or her ineffective assistance of trial counsel claims. Notably, however, if the petitioner has already received the benefit of independent counsel, then the conflict of interest fails to materialize. *See Fowler v. Joyner*, 753 F.3d 446, 465 (4th Cir. 2014).

Here, Rhines was represented by three attorneys at trial, sentencing, and on direct appeal: Wayne Gilbert, Joseph Butler, and Michael Stonefield. Docket 73 at 16-17. During the initial state habeas and the appeal from that proceeding, Rhines was represented by attorney Michael Hanson. *Id.* at 17. In South Dakota, ineffective assistance of trial counsel claims are not normally cognizable on direct appeal. *See State v. Hannemann,* 823 N.W.2d 357, 360

10

(S.D. 2012) ("Only in rare cases will an ineffective-assistance-of-counsel claim be ripe for review on direct appeal."); *State v. Arabie*, 663 N.W.2d 250, 256 (S.D. 2003). Consequently, Rhines's state habeas proceeding in which he was represented by attorney Hanson was his initial-review collateral proceeding. *See Martinez*, 132 S. Ct. at 1315 (defining initial-review collateral proceedings as those "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial."); *see also Trevino*, 133 S. Ct. at 1915 (applying *Martinez* when the state proceeding "make[s] it 'virtually impossible' for an ineffective assistance claim to be presented on direct review.") (citation omitted).

After the South Dakota Supreme Court denied his first state habeas petition, Rhines filed his federal habeas petition and was initially appointed attorneys Michael Butler and John Schlimgen. Docket 19; Docket 20. Attorney Michael Butler was discharged a little over one month after his appointment when this court determined that he may be a potential witness. Docket 44. Roberto Lange was then appointed as co-counsel to represent Rhines along with attorney Schlimgen. Docket 47. Schlimgen was the learned counsel.

Attorney Schlimgen continued to represent Rhines until August 2008, when Schlimgen was appointed as a magistrate judge in the Second Judicial Circuit of South Dakota. Docket 167; Docket 169. This court then appointed attorney Charles Rogers as co-counsel. Docket 174. Rogers was the learned counsel. Attorney Lange continued to represent Rhines until October 2009, when Lange was appointed as a United States District Judge for the District of

South Dakota. Docket 183. The federal public defenders' office was then appointed as co-counsel with Rogers. Docket 184. Attorneys from the federal public defenders' office, namely, William Delaney III, Jana Miner, Neil Fulton, Jason Tupman, and Tim Langley, have all noted appearances on behalf of Rhines. Docket 187; Docket 193; Docket 195; Docket 207; Docket 208. Attorney Rogers continued to represent Rhines until his retirement from the practice of law in March 2015. Docket 259. Finally, attorney Carol Camp was appointed on April 10, 2015, as learned counsel. Docket 260.

Thus, Rhines was not in the same position as the petitioners in *Gray*, *Juniper*, *Mendoza*, and *Speers* because Rhines's counsel during his initial-review collateral proceedings and his federal habeas proceeding did not overlap. Aside from the brief appointment of attorney Michael Butler–who did not, in fact, represent Rhines in his earlier proceedings but nonetheless was discharged–Rhines already received wholly independent counsel. *See Fowler*, 753 F.3d at 464-65 (noting that even with a brief overlap between state and federal habeas counsel the petitioner had independent counsel "for a substantial period of time during the pendency of his federal habeas petition in the district court."). Consequently, the same ethical dilemma arising in the Fourth and Fifth Circuit cases is simply not present in Rhines's case.

While Rhines contends that there was at least a partial overlap between his federal and state habeas counsel when he returned to state court in 2005

12

to exhaust his then-unexhausted claims,[4] the *Martinez* Court explained the boundaries of its "narrow exception" in no uncertain terms:

> *The rule of* Coleman *governs in all but the limited circumstances recognized here.* The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.*

*Martinez*, 132 S. Ct. at 1320 (emphasis added) (citations omitted). Rhines's return to state habeas court in 2005 was not his "first designated proceeding for a prisoner to raise a claim of ineffective assistance of trial counsel" and was therefore not his initial-review collateral proceeding. *Id.* at 1317. Rather, that opportunity came when Rhines was represented by attorney Hanson. By its own terms, *Martinez* does not apply to any proceeding beyond Rhines's initial-review collateral proceeding. Likewise, those cases from the Fourth and Fifth Circuits note that the conflict arises when it is the initial-review collateral proceeding counsel that overlaps with federal habeas counsel. *See Mendoza*, 783 F.3d at 204 (Owen, J., concurring), *Juniper*, 737 F.3d at 289. Consequently, even if there was an overlap in Rhines's federal and state habeas counsel during the later proceeding, that does not justify Rhines's request for an additional stay of this proceeding.

---

[4] Attorneys Schlimgen and Lange had both withdrawn by 2009, several years before the state court ruled on Rhines's petition in 2012.

Second, this is not a case where a petitioner's claims of ineffective assistance of trial counsel have gone unheard. Prior to Rhines's filing his amended federal habeas petition, this court instructed Rhines "to include every known constitutional error or deprivation entitling [him] to habeas relief." Docket 72. Additionally, Rhines was "advised that he may be presumed to have deliberately waived his right to complain of any constitutional error [or] deprivation not raised in the Amended Petition." *Id.*

In Rhines's amended federal habeas petition, he raised ten reasons why he believed trial counsel was constitutionally ineffective. Docket 73 at 12-13. Most of those claims were also raised by attorney Hanson during Rhines's first state habeas proceeding. This court determined, however, that four of those claims had not previously been raised and were unexhausted. Docket 116. After Rhines returned to state court to exhaust his non-exhausted state claims, those four ineffective assistance of trial counsel claims were litigated and decided by the state court. *See* Docket 204-1 at 15-25. Thus, the reason for the exception laid down in *Martinez*–that a petitioner's substantial ineffective assistance of trial counsel claims may never otherwise be heard at all–is not present in this proceeding.

What Rhines seeks now is an opportunity for his current counsel to comb through the record and look for additional ineffective assistance of trial counsel claims overlooked not only by attorney Hanson but also by each of Rhines's federal habeas attorneys. Such an expansive reading of *Martinez* is not warranted by the explicit narrowness of its holding. Moreover, *Martinez*

14

contemplated that the petitioner would present an existing ineffective assistance of trial counsel claim that the federal habeas court could analyze. *Martinez*, 132 S. Ct. at 1318 (explaining the court must determine whether the otherwise defaulted claim is a substantial one); *see also Sasser v. Hobbs*, 735 F.3d 833, 851 (8th Cir. 2013) (discussing the four potentially meritorious claims raised by the petitioner). Rhines has presented no potentially meritorious claims at all. And while, for example, the *Gray* court did not hold it against the petitioner that he had not yet presented any substantial claims in his request for substitute counsel, that was attributable to the conflict of interest that prevented his then-current counsel from doing so in the first instance. *Gray*, 526 Fed Appx. at 334-35 (noting "no material difference between an ethical prohibition on a lawyer's attempt to *investigate or advance* her own potential errors, on the one hand, and a like prohibition on her attempts to *identify and produce a list* of her own errors giving rise to a 'substantial claim' on the other hand.") (emphasis in original).

Finally, this court lifted the stay on Rhines's federal habeas proceeding on February 4, 2014, nearly two years after the *Martinez* case was handed down. Yet, Rhines did not seek leave to conduct the investigation sought by his pending motion for another 15 months. *See* Docket 265 (dated May 5, 2015). Rhines offers no explanation for this delay. As the Supreme Court explained, the exception it created was not only narrow, but also equitable. *See Martinez*, 132 S. Ct. at 1320. The untimeliness of Rhines's motion is but another reason that justifies denying his request for another stay.

15

**CONCLUSION**

Rhines received independent counsel during his initial-review collateral proceeding and his federal habeas proceeding. Rhines has not identified any ineffective assistance of trial counsel claims that have not already been resolved or were otherwise overlooked and would fall within the Supreme Court's *Martinez* decision. Rhines's late attempt to further delay this proceeding also undermines his claim that an additional stay is warranted. Accordingly, it is

ORDERED that the motion to hold this proceeding in abeyance (Docket 265) is denied.

Dated August 5, 2015

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE