UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHARLES RUSSELL RHINES,<br><br>  Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, Warden, South Dakota State Penitentiary;<br><br>  Defendant. | 5:00-CV-05020-KES<br><br>ORDER DENYING MOTION TO AMEND THE JUDGMENT AND DENYING MOTION TO STRIKE |

Petitioner, Charles Rhines, moves the court to alter or amend its judgment. Respondent, Darin Young, resists the motion. Respondent also moves to strike certain exhibits from the record. Rhines resists the motion. For the following reasons, the court denies the motion to alter or amend the judgment and denies the motion to strike.

## BACKGROUND

The procedural history of this case is set forth more fully in the court's February 16, 2016 order granting summary judgment in favor of respondent and denying Rhines's federal habeas petition. *See* Docket 305. The following facts are relevant to the pending motions:

Rhines is a capital inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota. He was convicted of premeditated first-degree murder for the death of Donnivan Schaeffer and of third-degree burglary of a Dig'Em Donuts Shop in Rapid City, South Dakota. A jury found that Rhines

should be subject to death by lethal injection, and a state circuit court judge imposed the sentence. On February 16, 2016, this court granted respondent's motion for summary judgment and denied Rhines's federal petition for habeas corpus. Docket 305. The court entered judgment in favor of respondent on the same day. Docket 306.

I.  **Rhines's Rule 59(e) Motion**

### LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes within the time period immediately following entry of judgment. *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (citing *White v. N.H. Dep't of Empl. Sec.*, 455 U.S. 445, 450 (1982)). "Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* The habeas context is no exception to the prohibition on using a Rule 59(e) motion to raise new arguments that could have and should have been made before the court entered judgment. *Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir. 1993). The Rule "is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. United States Dep't of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993); *see also* 11 Charles Alan Wright &

Arthur R. Miller, *Federal Practice & Procedure, Federal Rules of Civil Procedure* § 2810.1 (3d ed.) ("However, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly"). "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend [a] judgment pursuant to Rule 59(e)[.]" *Metro. St. Louis*, 440 F.3d at 933.

## DISCUSSION

### A. Conflict of Interest

Rhines's conflict of interest argument is based on his interpretations of the Supreme Court's *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) opinion. On June 5, 2015, Rhines moved to hold his federal habeas proceeding in abeyance.[1] He argued that the stay was necessary so that he could investigate potential ineffective assistance of trial counsel claims premised on the *Martinez* decision. On August 5, 2015, the court concluded that *Martinez* did not apply to him and denied Rhines's motion for several reasons. Docket 272. As one reason for denying Rhines's motion, the court found that Rhines received independent counsel between his initial-review collateral proceeding and his federal habeas proceedings.[2] Thus, there was no conflict of interest that interfered with Rhines's federal habeas counsel.

---

[1] The court lifted the earlier stay on Rhines's federal habeas proceeding on February 4, 2014. Docket 224. Respondent's summary judgment motion became ripe for review on November 26, 2014.

[2] The court's August 5, 2015 order traces the lineage of attorneys who have represented Rhines throughout his state and federal proceedings. Docket 272 at 10-12. The court learned during oral argument on respondent's summary judgment motion that two other attorneys–Judith Roberts and Mark Marshall–also represented Rhines during his second state habeas proceeding.

Then on October 21, 2015, and two days prior to the oral argument hearing on respondent's summary judgment motion, Rhines moved for reconsideration of the court's order denying his request for a stay as well as for permission to amend his federal habeas petition.[3] According to Rhines, the court "fail[ed] to consider the unusual factual scenario that exists in Mr. Rhines' case. Mr. Rhines has not simultaneously had the benefit of effective, independent counsel for the entire time that his case has been pending in either state or federal court." Docket 279 at 1. Rhines argued that the court's interpretation of *Martinez* and its analysis concerning the independence of his counsel was wrong. The court concluded, among other things, however, that *Martinez* did not apply and that Rhines was not entitled to relief. Docket 304 at 19-20.

Here, and like Rhines's first motion for reconsideration, Rhines contends that "this Court has failed to recognize the impact of [*Martinez*] and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013)" because several attorneys from the Federal Public Defenders' Office (FPDO) represented Rhines during part of his second state habeas proceeding and in his federal habeas proceeding. Docket 323 at 2; Docket 340 at 1. Rhines contends that this partial overlap creates an impermissible conflict of interest.

---

The names of those attorneys did not appear on the federal docket.

[3] Rhines also moved for permission to file a supplemental summary judgment brief to include the arguments that Rhines sought to add to his federal habeas petition. The court denied the request.

4

Capital petitioners such as Rhines have a statutory right to counsel, and the court may upon motion appoint substitute counsel if the "interests of justice" so require. *Martel v. Clair*, 132 S. Ct. 1276, 1286-87 (2012). The FPDO was appointed as co-counsel for Rhines in 2009. Docket 184. Rhines never moved for the FPDO's substitution.[4] Thus, the issue of whether Rhines was entitled to substitute counsel was not raised before this court. While Rhines argued that the partial overlap between the attorneys who represented him during part of his second state habeas proceeding and the conclusion of his federal habeas proceeding created an impermissible conflict of interest, at no time did Rhines move for substitute federal habeas counsel, and the court does not believe an impermissible conflict of interest exists. Docket 272 at 12. The court is satisfied that it did not base its decision on a manifest error of law or fact. And the court has twice analyzed and rejected Rhines's contention that *Martinez* otherwise applies to him. Because Rule 59(e) is not intended to give litigants "a second bite at the apple," it, likewise, is not intended to give them a third. *See Dale & Selby Superette*, 838 F. Supp. at 1348. Thus, Rhines's conflict of interest argument fails.

### B. Juror Bias and Impropriety

#### 1. Actual and implied bias of jurors

Rhines contends that two jurors at his trial harbored anti-homosexual biases against him. He argues that those biases infected his sentencing process and caused the denial of his constitutional rights to an impartial jury, to due

---

[4] Rhines returned to state court for his second state habeas proceeding in 2005.

5

process, to be free from the arbitrary imposition of the death penalty, and to equal protection of the law.

Rhines did not raise previously his juror bias claim in any state or federal proceeding.[5] According to Rhines, the reason that this issue was not presented earlier is because none of Rhines's previous attorneys interviewed the jurors from his trial. Some of the former jurors were interviewed recently, and Rhines has secured their signed affidavits. Rhines argues that the affidavits are "newly discovered evidence" under Rule 59(e) and asserts that the court should amend its judgment accordingly in light of this new evidence.

Rhines's argument fails, however, for several reasons. First, a motion under Rule 59(e) cannot be used to "tender new legal theories, or raise arguments which should have been offered or raised prior to entry of judgment." *Metro. St. Louis*, 440 F.3d at 933; *see also Bannister*, 4 F.3d at 1440 ("Bannister first raised the claim in the district court in a Rule 59(e) motion. The district court correctly found that the presentation of the claim in a 59(e) motion was the functional equivalent of a second [habeas] petition, and as such was subject to dismissal as abusive"). Thus, Rhines's juror bias claim should have been raised at the outset of his habeas proceeding. *See* Docket 72 (directing Rhines "to include every known constitutional error or deprivation entitling [him] to relief"). Second, a principal purpose of Rule 59(e) is to afford courts the opportunity to correct their mistakes in the period immediately

---

[5] Rhines's federal habeas petition asserted that his right to an impartial jury was violated because certain jurors were excluded based on their views of the death penalty. *See* Docket 73.

6

following the entry of the judgment. *Norman*, 79 F.3d at 750. But Rhines does not explain how the court made a mistake regarding an issue that was never before the court. Third, because Rhines did not raise his juror bias claim during any of his state proceedings, this court cannot consider it. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner . . . must 'fairly present' his claim in each appropriate state court"); *Rucker v. Norris*, 563 F.3d 766, 769 (8th Cir. 2009) (agreeing with the district court that an "issue is procedurally barred because it was not 'fairly present[ed]' to the appropriate state court") (alteration in original). And while Rhines argues that each of his prior attorneys–including his initial-review collateral proceeding attorney–failed to develop his juror bias claim, Rhines cannot avail himself of the rule from *Martinez* because Rhines's defaulted claim is not a claim for ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1320.

As to Rhines's newly discovered evidence argument, the court finds that Rule 59(e) is applicable in this context.[6] The Eighth Circuit applies the same standard for Rule 59(e) motions based on newly discovered evidence as it does

---

[6] In *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) the Supreme Court held that a habeas petitioner must satisfy § 2254(e)(2) "when a prisoner seeks relief based on new evidence without an evidentiary hearing." But unlike this case, the *Holland* case involved an exhausted claim rather than a new claim. *Id.* at 650. Regardless, relief under § 2254(e)(2) also requires as a prerequisite that the new evidence "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii); *Holland*, 542 U.S. at 653.

7

for Rule 60(b)(2) motions.[7] *Miller v. Baker Implement Co.*, 439 F.3d 407, 414 (8th Cir. 2006). "To prevail on this motion, [the movant is] required to show— among other things—that the evidence proffered with the motion was discovered after the court's order and that he exercised diligence to obtain the evidence before entry of the order." *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014). The evidence must also be admissible. *Murdock v. United States*, 160 F.2d 358, 362 (8th Cir. 1947).

Here, and regardless of whether the juror affidavits are admissible, Rhines has had roughly twenty years to develop the evidence he now offers. In fact, Rhines faults each of his attorneys for not developing this evidence sooner. *See, e.g.*, Docket 323 at 2 ("Beginning with trial counsel, counsel at every stage of the prior proceedings have failed to interview the jurors"). But Rhines's allegations undermine the foundation of his motion. For Rhines to prevail, he must show that this evidence *could not have* been discovered earlier *despite* having exercised reasonable diligence to obtain it. Rhines, however, asserts that the evidence *should have* been discovered earlier *if* his attorneys were diligent. Rhines's contention is the inverse of what Rule 60(b)(2) is designed to address. He makes no showing that "he had been unable to uncover the newly discovered evidence prior to the court's summary judgment ruling." *Miller*, 439 F.3d at 414. Likewise, the decades-long period of delay

---

[7] Rule 60(b)(2) provides that litigants may seek relief from a final judgment or order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

while the evidence was obtainable indicates a lack of diligence. *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (rejecting an argument to present new evidence because "[i]t is difficult to see, moreover, how respondent could claim due diligence given the 7-year delay"). "Because this evidence was available to [Rhines], it should have been presented prior to the entry of judgment." *Metro. St. Louis*, 440 F.3d at 935.

Finally, to the extent that Rhines's motion could be construed as a motion to present new evidence related to issue IX.D of his federal habeas petition,[8] the court's conclusion is the same. Issue IX.D was adjudicated on the merits in state court. Section 2254(d) and the rule in *Pinholster* limit this court's review of a claim that was adjudicated on the merits in state court to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Rhines's juror affidavit evidence was not presented to or considered by the state court that adjudicated the claim. Rhines cannot use Rule 59(e) to circumvent § 2254(d) and *Pinholster*. *Pitchess v. Davis*, 421 U.S. 482, 489 (1975) (holding that the Federal Rules of Civil Procedure apply in § 2254 proceedings to the extent that they are not inconsistent with any statutory provisions). Consequently, this court cannot consider the evidence. Thus, Rhines's newly discovered evidence argument fails.

---

[8] Issue IX.D alleged that Rhines's trial attorneys were ineffective because they failed to exclude evidence of Rhines's homosexuality. *See* Docket 73.

## 2. Juror consideration of extrinsic evidence and *ex parte* contacts with the trial judge

Rhines argues that the jurors considered extrinsic evidence during the course of his trial. According to Rhines, the jurors at some point discussed a newspaper article that speculated about which of the jurors would serve as alternates. Rhines also argues that the jurors had improper *ex parte* contact with the trial judge when the judge allegedly told the jurors "that he would not refer to them by name and that the defense could ask them to affirm that the verdict as read was true." Docket 323 at 7. Rhines contends that these incidents violated his Sixth and Fourteenth Amendment rights.

This claim, like Rhines's juror bias claim, was not raised previously in any state or federal proceeding. For the reasons stated more fully in section I.B.1, *supra*, the court denies Rhines's motion to raise the claim for the first time now and denies Rhines's motion to present new evidence in support of the claim.

## 3. Whether one of the jurors did not live in Pennington County

Rhines's trial took place in Pennington County, South Dakota. Rhines argues that one of the jurors actually lived in Meade County, rather than Pennington County, and that the juror was thus ineligible to serve at Rhines's trial. Rhines argues that this error violated his Sixth and Fourteenth Amendment rights.

This claim, like Rhines's preceding arguments, was not raised previously in any state or federal proceeding. For the reasons stated more fully in section

10

I.B.1, *supra,* the court denies Rhines's motion to raise the claim for the first time now and denies Rhines's motion to present new evidence in support of the claim.

### C. Ineffective Assistance of Trial Counsel Claims

Rhines moves for reconsideration of the court's adjudication of issues IX.A, IX.B, and IX.I of his federal habeas petition. Those three issues all concerned whether Rhines's trial counsel's investigation and presentation of mitigating evidence constituted ineffective assistance of counsel. Each claim was considered and rejected in state court. This court concluded that Rhines was not entitled to relief on any of his claims. *See* Docket 305 at 82-101.

#### 1. Appropriate standard of review

Rhines challenges the legal standards used to adjudicate his ineffective assistance of trial counsel claims. Ineffective assistance claims are governed generally by *Strickland v. Washington,* 466 U.S. 668 (1984). The state court cited and analyzed the *Strickland* test. Docket 204-1 at 21 (explaining the so-called "deficient performance" and "prejudice" prongs). The court applied that test using the facts of the *Strickland* opinion and several other Supreme Court decisions involving attorneys' mitigation efforts for comparative purposes. *See id.* at 19 (citing *Burger v. Kemp*, 483 U.S. 776 (1987) and *Darden v. Wainwright*, 477 U.S. 168 (1986)). The state court determined that Rhines failed to show that his attorneys' performance was deficient and, therefore, it concluded that Rhines was not entitled to relief.

This court set out in its order granting summary judgment in favor of respondent the applicable standard of review in Rhines's case. *See* Docket 305 at 8-11. That standard is established by § 2254. The court cannot grant relief unless a state court's adjudication of a claim is "contrary to, or involved an unreasonable application of, clearly established Federal law" or unless the decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Also, "a determination of a factual issue made by a State court shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has elaborated on the application of those provisions in numerous opinions, and this court's order set forth those principles. Docket 305 at 8-11.

The court also set forth the more specific standards that apply when a state court adjudicates an ineffective assistance claim. *Id.* at 82. The court held:

> In the context of § 2254, however, Rhines must overcome an additional hurdle. This court's task is to determine if the state court's decision involved an objectively unreasonable application of the *Strickland* standard. *See Knowles* [*v. Mirzayance,*] 556 U.S. [111,] 122 [(2009)]. Because the *Strickland* standard itself is deferential to counsel's performance, and because this court's review of the state court's decision under § 2254 is also deferential, the standard of review applied to Rhines's ineffective assistance claims is 'doubly deferential.' *Id.* at 123. Consequently, 'the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.' *Harrington v. Richter,* 562 U.S. 86, 105 (2011); *see also Pinholster,* 131 S. Ct. at 1403

12

> (noting the petitioner must demonstrate that the state court's determination regarding both prongs was unreasonable to be entitled to relief).

*Id.* This court concluded that the state court's resolution of Rhines's ineffective assistance claims was reasonable and that Rhines was not entitled to relief.

Here, Rhines argues that the state court's interpretation of the *Strickland* test was wrong. He argues that the state court's appraisal of the "deficient performance" prong was not exacting enough of counsel's performance. Rhines also argues that the state court's description of the "prejudice" prong was incomplete. And Rhines argues that this court's review of the state court's decision was based on an improper standard.

Rhines, however, already received an opportunity to challenge–and he did challenge–the state court's analysis. *See* Docket 232 at 80-96 (Rhines's summary judgment brief). Rule 59 is not a vehicle for re-litigating old matters or advancing arguments that should have been made before. *Metro. St. Louis*, 440 F.3d at 933. Rhines cites in support of his "deficient performance" argument the Supreme Court's decisions in *Strickland*, *Wiggins v. Smith*, 539 U.S. 510 (2003), *Williams v. Taylor*, 529 U.S. 362 (2000), and *Rompilla v. Beard*, 545 U.S. 374 (2005). This court previously considered and rejected the same argument Rhines raises now. The court stated:

> While Rhines argues that *Williams* and *Wiggens* were controlling and dispositive, the Supreme Court has explained that *Strickland* is the appropriate standard that courts should apply to resolve ineffective assistance claims. *Pinholster*, 131 S. Ct. at 1406-07 (rejecting argument that *Williams*, *Wiggins*, and *Rompilla v. Beard*, 545 U.S. 374 (2005) impose a duty to investigate in every case). Likewise, the Court cautioned against 'attributing strict rules to

13

this Court's recent case law.' *Id.* at 1408." Docket 305 at 97. The court is satisfied that it did not make a manifest error concerning this issue.

As to Rhines's prejudice argument, the state court described the prejudice prong as requiring a showing of "actual prejudice." Docket 204-1 at 21. Rhines argues that the state court should have included the Supreme Court's further explanation that prejudice requires "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694. A defendant must satisfy both *Strickland* prongs, however, and a court can adjudicate them in either order if the defendant fails to establish one. *Id.* at 697. The state court never reached the prejudice inquiry because it concluded that Rhines's attorneys rendered reasonably competent assistance. This court agreed with the state court. Thus, even assuming the state court's description of the prejudice prong was objectively unreasonable–which it was not–the error would not affect the outcome of Rhines's case. The court is satisfied that it did not make a manifest error concerning this issue.

Regarding Rhines's argument that this court applied the incorrect standard of review to the state court's decision, Rhines does not identify the standard the court should have applied. Rhines cites primarily to various cases involving the review of ineffective assistance claims in the first instance. The Supreme Court has explained, however, that the "doubly deferential" standard

14

under § 2254(d) applies when a federal court reviews a state court's adjudication of an ineffective assistance claim on the merits. The court finds no manifest error with its decision. Thus, Rhines is not entitled to relief.

### 2. Mitigation investigation

The bulk of Rhines's motion contends that his trial attorneys failed to properly investigate and present mitigating evidence. His arguments can be grouped broadly into five areas where, according to Rhines, his attorneys should have investigated further: (1) Rhines's family; (2) Rhines's military history; (3) Rhines's jail and criminal records; (4) Rhines's mental health; and (5) Rhines's family history of exposure to neurotoxins.

Each area highlighted by Rhines, with the exception of the neurotoxins issue, was investigated by his trial attorneys. *See* Docket 204-1 at 16-19 (noting "Rhines'[s] counsel did investigate possible mitigation evidence. They investigated by talking to Rhines, his family and friends, reviewing his military service records, his schooling, employment history, [and] psychiatric and psychological examinations and found that there was very little mitigating evidence to be found or presented."). Like Rhines's standard of review argument, Rhines had the opportunity to contest–and did contest–the state court's determinations concerning his attorneys' efforts and their strategy. Docket 232 at 80-93. This court rejected those arguments and concluded that Rhines was not entitled to habeas relief. Here, Rhines devotes many pages of his reconsideration brief to re-litigating his mitigation claims. But Rhines cannot use Rule 59(e) to re-litigate old matters or advance new arguments that

should have been made before. *Metro. St. Louis*, 440 F.3d at 933. And bookending those arguments with conclusory language that this court's decision was unreasonable is an insufficient basis to justify relief. The court finds no manifest error with its decision. Thus, Rhines's claims will not be revisited.

The court will, however, address several specific issues raised in Rhines's motion. For example, Rhines cites a number of affidavits signed by individuals who, like the jurors, were also recently interviewed. *See, e.g.*, Docket 323-8 (signed March 15, 2016); Docket 323-9 (signed March 11, 2016); Docket 323-10 (signed March 15, 2016). Rhines references these affidavits in support of his arguments that the court's decision was erroneous. Rhines's ineffective assistance of counsel claims were each adjudicated on the merits in state court. Rhines has not shown that these contemporary affidavits, or similar evidence containing the same substance, were ever presented to or considered by the state court. Thus, this court cannot consider the affidavits. *Pinholster*, 563 U.S. at 181.

As for Rhines's neurotoxins argument, it is a theory that Rhines advanced in his October 21, 2015 motion to amend his federal habeas petition. *See* Docket 281 at 3-5. Rhines asserted that his trial attorneys as part of their mitigation efforts should have investigated whether Rhines was exposed to pesticides and other toxins while he was growing up in McLaughlin, South Dakota. Rhines argued that that exposure could have caused him to develop various neurological disorders. He claimed that the failure of his trial attorneys

16

to pursue this area of inquiry suggested that their mitigation efforts were deficient. And Rhines moved to buttress his argument with affidavits from three experts who reviewed Rhines's case file and records. *See* Docket 281-1, -2, and -3. Those experts made their own findings and conclusions concerning Rhines, his background, his mental health, and the effectiveness of Rhines's trial counsel's mitigation efforts.

This court denied Rhines's motion to amend his federal habeas petition to include his new theory and evidence. Rhines's ineffective assistance claims were each adjudicated on the merits in state court. This court held that the rule in *Pinholster* prevented Rhines from "bolster[ing] his exhausted ineffective assistance claims with new evidence that was not presented to or considered by the state court." Docket 304 at 18. The court, for similar reasons, denies Rhines's motion to present these arguments and this evidence as part of his reconsideration motion.

In sum, Rhines has not identified any manifest error with the court's judgment concerning his ineffective assistance claims. Thus, Rhines is not entitled to relief.

### D. Jury Note and Juror Confusion

Rhines moves for reconsideration of the court's adjudication of Issue IX.E of his federal habeas petition. Issue IX.E alleged that Rhines's trial attorneys were ineffective due to the way they handled a note from the jurors. The state court denied Rhines's claim, and this court concluded that Rhines was not entitled to relief. Docket 305 at 106-08.

17

Here, Rhines attempts to re-litigate Issue IX.E. He invokes arguments that either were made or should have been made before and also cites evidence that was not presented to the state court that adjudicated his claim. Rhines's argument suffers the same infirmities as those discussed in sections I.A-C, *supra*. The court is satisfied that its decision did not involve any manifest error. Thus, Rhines's ineffective assistance claim will not be revisited.

Rhines has failed to justify altering or amending the court's judgment. Thus, Rhines's Rule 59(e) motion is denied.

## II.    Respondent's Motion to Strike

Respondent moves the court to strike various exhibits from the court's docket. These exhibits consist of affidavits and other documents that the court determined that it cannot consider because, for example, Rhines did not present the evidence to any state court for consideration. *Cf. Pinholster*, 563 U.S. at 181. Rhines, nonetheless, cited to some of those same exhibits in his Rule 59(e) motion, and respondent asserts that Rhines may continue to do so on appeal. Thus, respondent asks the court to excise the exhibits from the docket.

The court will not strike the exhibits. Respondent has not shown that he will be prejudiced by the continued presence of the exhibits on the court's docket. Thus, the motion is denied.

## CONCLUSION

Rhines has not shown any manifest error with the court's decision. Thus, he is not entitled to relief. Respondent has not shown that the various exhibits

should be struck from the court's docket. Therefore, the exhibits will remain. Thus, it is

      ORDERED that Rhines's motion to alter or amend the judgment (Docket 323) is denied.

      IT IS FURTHER ORDERED that respondent's motion to strike (Docket 324) is denied.

      Dated July 5, 2016.

                            BY THE COURT:

                            */s/Karen E. Schreier*
                            KAREN E. SCHREIER
                            UNITED STATES DISTRICT JUDGE