# United States Court of Appeals

## For the Eighth Circuit

————————————

No. 16-3360
No. 17-1060

————————————

Charles Russell Rhines

*Petitioner - Appellant*

v.

Darin Young

*Respondent - Appellee*

————————

Appeals from United States District Court
for the District of South Dakota - Rapid City

————————

Submitted: January 11, 2018
Filed: August 3, 2018

————————

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

————————

LOKEN, Circuit Judge.

Charles Russell Rhines brutally murdered Donnivan Schaeffer while burgling a donut shop in Rapid City, South Dakota, on March 8, 1992. A state court jury convicted Rhines of murder and burglary and sentenced him to death. The Supreme Court of South Dakota affirmed the conviction and sentence, <u>State v. Rhines</u>, 548

N.W.2d 415, 424 (S.D.), cert. denied, 519 U.S. 1013 (1996), and subsequently affirmed the denial of state post-conviction relief. Rhines v. Weber, 608 N.W.2d 303, 305 (S.D. 2000). The district court[1] denied his federal petition for a writ of habeas corpus but issued a certificate of appealability on multiple claims. See 28 U.S.C. § 2253(c). On appeal in Case No. 16-3360, Rhines argues six issues, one relating to the guilt phase and five to the penalty phase of the trial. We affirm.

## I. A Guilt Phase Issue.

Rhines argues that the state courts violated his federal constitutional privilege against self-incrimination by admitting at trial prejudicial inculpatory statements he made after warnings that he claims did not comply with Miranda v. Arizona, 384 U.S. 436 (1966). Miranda held that, before a person in custody can be interrogated, he must be warned:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

Id. at 479. The Supreme Court of South Dakota considered this issue at length on direct appeal and denied relief, concluding that Rhines was given constitutionally adequate warnings. Rhines, 548 N.W.2d at 424-29.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), when a claim has been "adjudicated on the merits in State court proceedings," a federal writ of habeas corpus will not be granted:

---

[1] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

-2-

unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Rhines argues, as he did to the district court, that the South Dakota Supreme Court's determination that the warnings were adequate was an objectively unreasonable application of Miranda.

We recite the relevant facts as detailed in the Supreme Court of South Dakota's opinion.  In February 1992, Rhines was terminated as an employee at the Dig 'Em Donuts Shop in Rapid City.  On March 8, the body of employee Schaeffer was found in the Dig 'Em Donut Shop storeroom with his hands bound and stab wounds.  Approximately $3,300 was missing from the store.  On June 19, Rhines was arrested in Seattle for a burglary in Washington State.  After a local police officer read a Miranda warning, Rhines asked, "Those two detectives from South Dakota are here, aren't they?"  He was placed in a holding cell without questioning.

That evening, Rapid City Police Detective Steve Allender and Pennington County Deputy Sheriff Don Bahr arrived to question Rhines about the Dig 'Em Donuts burglary and the murder of Schaeffer.  During a suppression hearing prior to trial, Detective Allender recalled informing Rhines of his Miranda rights as follows:

> [Allender]: You have the continuing right to remain silent. Do you understand that?
> [Rhines]: Yes.
> [Allender]: Anything you say can be used as evidence against you. Do you understand that?
> [Rhines]: Yes.

-3-

[Allender]: You have the right to consult with and have the presence of an attorney, and if you cannot afford an attorney, an attorney can be appointed for you free of charge. Do you understand that?
[Rhines]: Yes.
[Allender]: Having these rights in mind, are you willing to answer questions?
[Rhines]: Do I have a choice?
[Allender]: Yes [you do] have a choice, in fact [you do] not have to talk with us at all.
[Allender again asked Rhines if he wanted to talk with the detectives]
[Rhines]: I suppose so, I'll answer any questions I like.

After these warnings, Rhines gave the officers permission to tape record his statement and made a chilling confession to committing the Dig 'Em Donuts burglary and killing Schaeffer.  On June 21, after Allender and Bahr gave the same warnings, Rhines again confessed to the burglary and killing.

At trial, over Rhines's objections, the prosecution introduced Detective Allender's testimony regarding Rhines's statements during the untaped portion of the June 19 interview, and recordings of the June 19 and June 21 interviews.  From the recordings, the jury heard that Rhines broke into Dig 'Em Donuts to burglarize it. During the burglary, Schaeffer entered the store to retrieve money and supplies for another store.  Rhines stabbed Schaeffer in the stomach.  With Schaeffer "thrashing around and screaming," Rhines stabbed him in the upper back, then "help[ed] him up and walk[ed] him into the back room and s[a]t him down on the pallet and walk[ed] him forward, he goes rather willingly like he's decide it's time to go."  In the back room, Rhines stabbed Schaeffer in the head, attempting to "stop bodily function." After that, with Schaeffer still breathing, Rhines "tied his hands behind him" and went back to the office to finish collecting money.  A medical examiner testified that Schaeffer's wounds were consistent with Rhines's confession.

On direct appeal, Rhines argued the Miranda warnings were constitutionally deficient in three ways: (i) he was informed of his "continuing right to remain silent," but not his right to cut off questioning whenever he wished; (ii) he was informed of "the right to consult with and have the presence of an attorney," but not his right to an attorney before and during questioning; and (iii) he was informed that "an attorney can be appointed for you free of charge," but not that an attorney would or must be appointed. The Supreme Court of South Dakota concluded the warnings were sufficient, applying the standard in Duckworth v. Eagan, 492 U.S. 195, 203 (1989) ("[t]he inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda"). The Court reasoned that the interview transcript demonstrated that Rhines understood his right to cut off questioning at any time; indeed, he turned off the recorder when asked about a topic he did not wish to discuss. 548 N.W.2d at 427. Rhines was told of his right to an attorney at the beginning of each interview, a warning that "plainly communicated the right to have an attorney present at that time." Id. And the totality of the warning given "reasonably conveyed the right to appointed counsel." Id. at 428. The Court noted that "[t]he words of Miranda do not constitute a ritualistic formula which must be repeated without variation in order to be effective." Id. at 426, quoting Evans v. Swenson, 455 F.2d 291, 295 (8th Cir.), cert. denied, 408 U.S. 929 (1972).

The district court, reviewing the decision under AEDPA, concluded that "the South Dakota Supreme Court did not unreasonably apply clearly established federal law when it determined that Rhines received effective Miranda warnings prior to his June 19 and 21, 1992 interviews." Relying on Duckworth, the district court concluded that "the initial warnings given to Rhines touched all the bases required by Miranda." In reviewing a district court's denial of a § 2254 petition, we review the district court's findings of fact for clear error and its conclusions of law de novo. Middleton v. Roper, 455 F.3d 838, 845 (8th Cir. 2006) (standard of review).

Rhines cites no clearly established federal law that the warnings given to him were inadequate under <u>Miranda</u>.  He simply disagrees with the South Dakota Supreme Court's application of <u>Miranda</u> and clearly established federal cases interpreting <u>Miranda</u>.  That Court carefully considered each alleged deficiency in light of the warnings given and the circumstances surrounding the warnings, applying the proper Supreme Court standard and considering relevant precedent from this court.  Rhines makes the conclusory assertion that the warnings did not reasonably convey his rights.  But he does not explain why the warnings given were objectively unreasonable in these circumstances.  Reviewing de novo, the district court did not err in concluding that Rhines is not entitled to relief on this claim under AEDPA.

## II. Penalty Phase Issues.

Two of the five penalty phase issues raised on appeal concern claims of ineffective assistance of trial counsel (IAC) at the penalty phase.  These federal claims have a long and complicated procedural history.

The trial court appointed three attorneys to represent Rhines at trial -- Joseph Butler and Wayne Gilbert, both in private practice, and Michael Stonefield, a local public defender.  After the jury found Rhines guilty of first-degree murder and third-degree burglary, the case proceeded to the sentencing phase.  The prosecution incorporated evidence from the guilt phase and rested.  The defense presented testimony of Rhines's two sisters.  They described his academic, behavioral, and social struggles as a child and teenager.  They testified that he dropped out of school in early high school, was not helped by enlisting in the military at age seventeen, and struggled with his sexuality as a gay man who grew up in a conservative, Midwestern family.  Consistent with South Dakota law, the jury found that one or more statutory aggravating circumstances existed and sentenced Rhines to death.

-6-

After his conviction and sentence were affirmed on direct appeal, Rhines applied to the state trial court for a writ for habeas corpus. Represented by new, independent appointed counsel, the Second Amended Application raised forty-six issues, including ten claims of IAC by trial and appellate counsel. The ninth claim was that trial counsel "failed to investigate his background for mitigation evidence." After an evidentiary hearing at which the three trial attorneys testified and the subsequent submission of deposition testimony by a defense attorney expert, the trial court denied the application in a lengthy letter ruling discussing many allegations of trial counsel IAC. With respect to the penalty phase claim, Judge Tice wrote:

> **(24) Failure to investigate defendant's background to provide effective mitigation.**
> As discussed earlier, there were substantial efforts made to develop mitigation evidence. Trial counsel used reasonable efforts to do so. There is no evidence to support a belief that any further efforts would have been fruitful.

Rhines appealed this ruling to the Supreme Court of South Dakota. Regarding the penalty phase IAC claim, Rhines argued that his trial attorneys' billing records "showed that only a cursory amount of work was devoted to mitigation witnesses. The problem is we do not know if there is mitigation evidence favorable . . . because the work was not done." The Supreme Court of South Dakota affirmed in February 2000. After lengthy review of three guilt phase IAC issues, the Court stated:

> Rhines raises several other issues relating to ineffective assistance of counsel in his brief. However, these remaining instances are either conclusions, which are wholly unsupported by the record, or sound trial strategy when judged by the circumstances facing trial counsel at the time of their decisions. . . . Rhines has not proven either prong of the [IAC] test in regard to these claims.

Rhines, 608 N.W.2d at 313.

-7-

Rhines immediately filed a federal habeas petition; a First Amended Petition filed in November 2000 alleged thirteen grounds for relief.  The district court concluded that numerous grounds were unexhausted and stayed the petition pending exhaustion of Rhines's state court remedies.  The State appealed, we reversed; the Supreme Court, resolving a conflict in the circuits, held that, "in limited circumstances," the district court "has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court . . . and then to return to federal court for review of his perfected petition." Rhines v. Weber, 544 U.S. 269, 271-72, 277 (2005), rev'g 346 F.3d 799 (8th Cir. 2003).  We then remanded to the district court for further consideration under the Supreme Court's new standards. Rhines v. Weber, 409 F.3d 982, 983 (8th Cir. 2005).  In December 2005, the district court granted a stay.  The court concluded that two penalty phase IAC issues were claims that may not have been exhausted in Rhines's state habeas proceeding -- that trial counsel's presentation of mitigation evidence was "tepid," and that counsel failed to hire a mitigation expert.

Rhines then returned to the South Dakota state courts and exhausted his unexhausted claims, including these two penalty phase IAC claims, in a successive state habeas proceeding.  Based on the evidentiary record from the initial state habeas proceeding, and extensive affidavits and exhibits submitted by the State, the trial court granted the State's motion for summary judgment on the merits of the penalty phase IAC claims. Rhines v. Weber, No. Civ. 02-924, Memorandum Decision (S.D. 7th Jud. Cir. Sept. 17, 2012).  Judge Trimble also ruled that one claim, that counsel presented only "tepid" mitigation evidence at the penalty phase, was raised in the first habeas proceeding, was decided by Judge Tice, and was therefore precluded by res judicata.  The Supreme Court of South Dakota denied probable cause to appeal, and the Supreme Court of the United States denied Rhines's petition for certiorari review. Rhines v. Weber, 571 U.S. 1164 (2014).  With all claims in Rhines's federal petition now exhausted, the district court lifted the stay.  On February 16, 2016, in a 132-page

-8-

Order, the district court granted the State's motion for summary judgment and denied Rhines's First Amended Petition for federal habeas corpus relief.

## A. Penalty Phase IAC.

Rhines argues the district court erred in rejecting his claim that trial counsel were ineffective in investigating and presenting mitigating evidence during the penalty phase of trial, and that the state courts' contrary determination, made without an evidentiary hearing, was an unreasonable application of Supreme Court precedent based on unreasonable findings of fact. We review the district court's legal conclusions de novo and its factual findings for clear error. Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003). In rejecting this claim, both the state courts and the district court applied the familiar IAC standard of Strickland v. Washington, 466 U.S. 668 (1984). To establish a claim for ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The defendant must also "show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

To warrant federal habeas relief, Rhines must establish that the state courts' decisions during the state habeas proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of" the Strickland standard; or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These are deferential standards. In reviewing a state court's application of Strickland under § 2254, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011). Our review is "limited to the record that was before

-9-

the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 180 (2011). "To determine whether the decision involved an unreasonable application of clearly established federal law, we review the decision reached in state court proceedings, but not the quality of the reasoning process." Dansby v. Hobbs, 766 F.3d 809, 830 (8th Cir. 2014), cert. denied, 136 S. Ct. 297 (2015).

When a habeas claim has been adjudicated on the merits by the state courts, we review "the last reasoned decision of the state courts." Worthington v. Roper, 631 F.3d 487, 497 (8th Cir.) (quotation omitted), cert. denied, 565 U.S. 1063 (2011). Here, the district court considered three distinct penalty phase IAC claims -- failure to perform an adequate mitigation investigation, presentation of a "tepid" mitigation case at trial, and failure to hire a mitigation expert. The first claim was raised in Rhines's first state habeas petition and exhausted when the Supreme Court of South Dakota summarily affirmed Judge Tice's denial. Rhines, 608 N.W.2d at 313. The second two claims were not exhausted until the Supreme Court of South Dakota denied leave to appeal Judge Trimble's Memorandum Decision granting summary judgment dismissing these claims.

In his September 2012 Decision, Judge Trimble expressly declined to reconsider the earlier rejection of the failure-to-investigate claim on the merits:

> As to the issues already addressed by the Supreme Court and the habeas court, the doctrine of res judicata disallows reconsidering an issue that was actually litigated or that could have been raised and decided in a prior action. Ramos v. Weber, 2000 S.D. 111, 616 N.W.2d 88; SDDS, Inc. v. State, 1997 S.D. 114, ¶ 16, 569 N.W.2d 289, 295 [citation omitted].

Thus, Judge Trimble considered new evidence submitted by Rhines in the successive state habeas proceeding -- principally, a June 2012 Affidavit of Dr. Dewey Ertz, a psychologist whose testing showed results consistent with Attention Deficit

-10-

Hyperactivity Disorder (ADHD) and learning disorders -- only in connection with the unexhausted claims. This ruling significantly affects our consideration of these issues. First, it establishes that "the last reasoned decision of the state courts" on the failure to investigate claim was the Supreme Court of South Dakota's summary affirmance of Judge Tice's decision in October 1998 rejecting this claim on the merits *after a full evidentiary hearing at which all trial attorneys and a defense attorney expert testified live or by deposition*. Second, the Affidavit of Dr. Ertz submitted by Rhines in the successive state habeas proceeding, on which Rhines heavily relies on this appeal, may be considered in deciding the two then-unexhausted claims, but is *not* part of the record on the previously exhausted failure to investigate claim. See 28 U.S.C. § 2254(e)(2); Holland v. Jackson, 542 U.S. 649, 650-53 (2004). Third, Judge Trimble's additional ruling that the tepid-presentation unexhausted claim was barred by res judicata as a matter of South Dakota law is an independent and adequate state ground that bars federal habeas relief on this claim. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Hanna v. Ishee, 694 F.3d 596, 613-14 (6th Cir. 2012), cert. denied, 577 U.S. 844 (2013); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007), cert. denied, 553 U.S. 1067 (2008); cf., Foster v. Chatman, 136 S. Ct. 1737, 1746-47 (2016).

   1. The Failure To Investigate Claim. Rhines argues that trial counsel were ineffective because they failed to conduct an adequate mental health investigation, failed to provide adequate background information to a retained psychiatrist, failed to follow up on the results of psychological testing, and inadequately investigated Rhines's family background and school and military records. Prior to trial, Rhines was evaluated by Dr. D.J. Kennelly, a psychiatrist, for competency, mental illness, and sanity, and Dr. Bill H. Arbes, a psychologist. Dr. Kennelly found no signs of mental illness, but saw signs of personality deficits. Dr. Arbes's report found that Rhines suffered from general anxiety disorder and schizotypal personality disorder with paranoid, schizoid, or avoidant traits.

-11-

In denying this claim after a full evidentiary hearing, Judge Tice noted: "there were substantial initial efforts made to develop mitigation evidence.  Trial counsel used reasonable efforts to do so.  There is no evidence to support a belief that any further efforts would have been fruitful."  The Supreme Court of South Dakota cryptically affirmed this ruling.  But Judge Trimble, laying foundation for considering the unexhausted tepid-presentation claim on an expanded summary judgment record, described trial counsel's investigative efforts in greater detail:

> A review of the record reveals that Rhines' counsel did investigate possible mitigation evidence.  They investigated by talking to Rhines, his family and friends, reviewing his military service records, his schooling, employment history, psychiatric and psychological examinations and found that there was very little mitigating evidence to be found or presented.  Counsel also looked to Rhines for information.  Gilbert asked him to write an autobiography from which he hoped to obtain mitigating information.   The information revealed in this autobiography was at best disturbing.  Rhines autobiography described his poor performance in school   The attached affidavits from his teachers reveal that he was disruptive, defiant and rebellious.  The affidavit from Rhines' childhood friend, Kerry Larson, indicates that Larson's testimony would not be favorable to Rhines.  He describes Rhines as "intimidating and scary" and knew of Rhines' attempt to blow up the grain elevator.  He also said Rhines had a reputation for being a fire starter, and for abusing small animals.  He also stated that he witnessed Rhines pouring gasoline on an anthill and setting it on fire in the 6th grade.  Furthermore, the other friends that Rhines named in his answers to interrogatories as being helpful in the mitigation case, were interviewed and they did not provide any favorable testimony to support Rhines' allegations.

> His military records show that he was jailed and disciplined and Article 15'd on numerous occasions for insubordination, drug use, theft of plastic explosives, and assault with a deadly weapon on a fellow service member.  In 1976, Rhines was discharged on less than honorable conditions 4 months before the completion of his enlistment.

After leaving the military, Rhines briefly attended college until he burgled a dorm room in 1977.  He then obtained employment with an excavating contractor where he was taught to use dynamite.  His employment ended when he stole his employer's dynamite and wired a grain elevator to explode.  One of his employers became aware of his plan and rushed to the elevator and unwired the dynamite before Rhines could explode it.

Between his release from the penitentiary in 1987 and the 1992 murder, Rhines worked various jobs.  He worked at a doughnut shop in Seattle, Washington, until he embezzled approximately $40,000 from the company by forging payroll checks made payable to himself.

*     *     *     *     *

[Trial counsel] Gilbert further explained in his affidavit that Rhines' sisters were emphatic that their elderly mother could not take the stand or assist in his defense.  Gilbert stated that the defense team met with Dr. D.J. Kennelly, a psychiatrist and that he did not recognize anything in his report as being useful as mitigation evidence.  Dr. Kennelly consulted with Dr. Bill H. Arbes, a psychologist, and no useful evidence was gleaned from his report, either.  Gilbert stated that he discussed having Rhines giv[e] his own allocution but it was determined that Rhines' allocution would not be convincing.  He further stated that Rhines agreed that his allocution would not be effective.

Based largely on Dr. Ertz's report, which we may not consider on this issue, Rhines argues that trial counsel "bungled" the mental health investigation and "never conducted a thorough investigation of Mr. Rhines's background and history."  But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland, 466 U.S. at 690-91.  Here, as in Burger v. Kemp, 483 U.S. 776 (1987), we agree with the state courts and the district court "that there was a reasonable basis for [counsel's] strategic decision that an explanation of petitioner's

-13-

history would not have minimized the risk of the death penalty.  Having made this judgment, he reasonably determined that he need not undertake further investigation [of Rhines's past]." Id. at 795.  As Judge Tice noted in denying this claim, "There is no evidence [in the initial state habeas record] to support a belief that any further efforts would have been fruitful."  "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005).

2. The Tepid Presentation Claim.   At sentencing, defense counsel called only two mitigation witnesses, Rhines's sisters, who testified that Rhines suffered from social, emotional, and learning difficulties as a child and teen.  Rhines argues counsel provided ineffective assistance by failing to present testimony by Dr. Arbes to show Rhines suffered from a serious psychological disorder.  As discussed, this issue is procedurally barred by the state court's res judicata decision.  We also agree with the district court that the claim fails on the merits.  To illustrate, we quote only a small portion of Judge Trimble's thorough discussion of this issue:

> Rhines' trial counsels' mitigation strategy was predicated on two monumental defense victories:  1) a pretrial order in limine excluding Rhines' two prior felony convictions for burglary and armed robbery with a sawed off shotgun; and 2) a pretrial order in limine prohibiting the state from presenting evidence concerning non-statutory aggravating factors.

> \*     \*     \*     \*     \*

> [Quoting from trial counsel's testimony at the initial habeas hearing] So . . . who we ended up presenting as mitigation witnesses were his two sisters who were both adults, and they talked about him, what they remembered from his childhood and the contacts . . . they had with him more recently. . . . I saw us as being really boxed in . . . to how much about his life we could present without opening up the fact that . . . he had spent a good part of . . . his adult life in prison.

-14-

*   *   *   *   *

[D]ue to strategic reasons such as the fear of opening the door to allow evidence of Rhines past criminal history and other aggravating evidence which counsel has successfully moved *in limine* to exclude, a delicate line had to be walked in the presentation of any evidence at this phase of the trial.

*   *   *   *   *

The record is replete with evidence supporting the theory that the presentation of the evidence at the penalty phase was due to strategic planning and an effort to minimize the potential "bad" evidence that the State could have introduced to rebut Rhines' efforts to put in mitigating evidence.

Numerous cases confirm that the state court's analysis was not an unreasonable application of Strickland under the governing deferential standard -- "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105; see Darden v. Wainwright, 477 U.S. 168, 185-87 (1986); Strickland, 466 U.S. at 699; Fretwell v. Norris, 133 F.3d 621, 627-28 (8th Cir.), cert. denied, 525 U.S. 846 (1998); Sidebottom v. Delo, 46 F.3d 744, 754 (8th Cir.), cert. denied, 516 U.S. 849 (1995).  Rhines cites no contrary, factually indistinguishable Supreme Court or Eighth Circuit precedent.

3. Failure To Hire a Mitigation Expert.  Judge Trimble rejected this initially unexhausted claim because the investigative function of a mitigation expert was performed by Rhines's trial counsel, and a retained expert "would have interviewed the same friends, family, teachers, employers and reviewed the same records including the autobiography of Rhines, as his attorneys did."  The district court concluded that a reasonable argument supports this analysis "given the extensive investigation that had already taken place."  We agree.

-15-

As we agree with the district court that the state courts did not unreasonably apply Strickland in concluding that trial counsels' penalty phase efforts were not constitutionally deficient, we need not address whether the state courts unreasonably concluded there was no Strickland prejudice.

## B. Denial of Rhines's Motion to Amend.

Fifteen months after the district court lifted its stay in February 2014, Rhines filed a motion for an additional "minimum" 180-day stay to investigate new, unexhausted claims of penalty phase IAC and for permission to file a second amended federal habeas petition. The district court denied Rhines this untimely "opportunity for his current counsel to comb through the record and look for additional ineffective assistance of trial counsel claims overlooked not only by [his state post-conviction attorney] but also by each of [his prior] federal habeas attorneys." Rhines v. Young, Order Denying Motion for Abeyance at 14 (Aug. 5, 2015). Rhines moved to reconsider and for leave to amend his First Amended Petition, submitting findings and conclusions by three new experts. Specifically, he sought to amend his petition to include claims that his "trial counsel were ineffective for failing to investigate, develop, and present: (1) evidence of his childhood exposure to environmental toxins; (2) evidence of his brain damage; and (3) evidence of his military service and resulting trauma." On appeal, he argues this evidence "fundamentally alters" his penalty phase IAC claims and renders them unexhausted.

The district court denied this motion because the contention was contrary to the holding in Pinholster that federal habeas review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. 563 U.S. at 180-82. On appeal, Rhines argues the district court erred in denying his motion to amend and preventing him from investigating and presenting new and unexhausted claims of penalty phase trial counsel IAC. We review the denial of a

-16-

motion to amend for abuse of discretion.  Moore-El v. Luebbers, 446 F.3d 890, 901 (8th Cir. 2006) (standard of review).

Rhines argues these new, unexhausted claims of trial counsel IAC are not procedurally barred because his first state habeas counsel was ineffective in failing to conduct an independent review of trial counsel's performance under Martinez v. Ryan, 566 U.S. 1, 13-14 (2012).  But this case is governed by the "mixed petition" stay-and-abeyance principles established by the Supreme Court in Rhines:

> A mixed petition should not be stayed indefinitely. . . . [N]ot all petitioners have an incentive to obtain federal relief as quickly as possible.  In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. . . . Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. . . . And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.

544 U.S. at 277-78.  In response to this mandate, the district court identified unexhausted claims that were "potentially meritorious" and granted a stay "pending exhaustion of [those claims]."  Rhines then returned to state court and submitted new evidence supporting the unexhausted claims -- principally the report of Dr. Ertz.

Now, *years* later, based on alleged ineffectiveness of prior federal habeas counsel, new attorneys request a new, unlimited stay to pursue new, unexhausted claims of trial counsel penalty phase IAC supported by new experts.  This request is squarely at odds with the Supreme Court's definition in Rhines of the "limited circumstances" in which stay and abeyance of a mixed petition promotes exhaustion of state remedies without frustrating AEDPA's goal of finality.  A habeas petitioner granted a limited stay to exhaust state post-conviction remedies who returns to federal court and requests another stay to exhaust additional claims is deliberately engaging in dilatory tactics and intentional delay that are completely at odds with AEDPA's

-17-

purpose to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." Rhines, 544 U.S. at 276.  Moreover, in this case, Judge Trimble's opinion confirms that the new claims would be procedurally barred under South Dakota law; therefore, further exhaustion would be futile.  See Ashker v. Leapley, 5 F.3d 1178, 1180 (8th Cir. 1993).

We also conclude that the district court properly determined that the "new" claims Rhines seeks to raise in a second amended petition would be precluded by Pinholster.  Rhines raised now-exhausted penalty phase IAC claims that were rejected by the South Dakota courts on the merits.  The "new" claims Rhines identifies are no more than variations on the penalty phase IAC claims already presented in state court. They "merely provide[] additional evidentiary support for his claim that was already presented and adjudicated in the state court proceedings.  Thus, Martinez is inapplicable."  Escamilla v. Stephens, 749 F.3d 380, 395 (5th Cir. 2014).

For these reasons, the district court did not abuse its discretion in denying Rhines's motion to stay the habeas proceedings and file a second amended petition.

## C. Victim Impact Testimony.

In 1991, the Supreme Court overruled contrary prior decisions and held that the Eighth Amendment does not bar a State from concluding that "evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed."  Payne v. Tennessee, 501 U.S. 808, 827 (1991).  Rhines murdered Schaeffer in March 1992. Effective July 1, 1992, the South Dakota Death Penalty statute was amended to include as an aggravating or mitigating circumstance, "Testimony regarding the impact of the crime on the victim's family."  S.D.C.L. § 23A-27A-1 (1992).

-18-

Relying on Payne, the trial court overruled Rhines's objection and permitted the victim's mother to read a statement concerning the loss of her son during the penalty phase.  On direct appeal, Rhines challenged this ruling on many grounds, including a claim that admission of this victim impact evidence violated the Ex Post Facto Clause of the federal Constitution.  The Supreme Court of South Dakota rejected this contention because Payne was decided before Rhines's crime, Payne observed that "there is no reason to treat victim impact evidence differently than other relevant evidence is treated," 501 U.S. at 827, and under South Dakota law evidence is admissible if it is relevant and not unfairly prejudicial.  Rhines, 548 N.W.2d at 446.  The district court concluded that this was not an unreasonable application of clearly established federal law.  Rhines argues the district court erred.  We disagree.

A criminal or penal law has a prohibited *ex post facto* effect if it is "retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  Weaver v. Graham, 450 U.S. 24, 29 (1981).  Acknowledging that Payne was decided before he murdered Schaeffer, Rhines argues that S.D.C.L. § 23A-27A-1, enacted after his crime, violated the *ex post facto* prohibition because it made "victim impact . . . a new aggravating factor on which the jury could rely as the basis for a death sentence."

This contention is not supported by the record.  After admitting the mother's victim impact statement, the trial court instructed the jury:

> You received information on the effect of Donnivan Schaeffer's loss to his family.  This is sometimes called victim impact evidence.  This information was admitted for your consideration for a limited purpose: so that you may fully appreciate and comprehend the extent of the loss his death caused to his family and loved ones.  You may consider it for this purpose only.

-19-

> *You may not consider this victim impact evidence as an aggravating circumstance. Nor may you consider it as detracting in any way from mitigation evidence offered by the Defendant.*

(Emphasis added.)  This instruction makes clear that the victim impact evidence was admitted, as the Supreme Court of South Dakota explained, under longstanding, general principles of South Dakota law, not as evidence authorized by a newly-enacted statute and admitted as an aggravating basis for a death sentence.  The Court's ruling plainly was not an unreasonable application of clearly established federal law applying the Ex Post Facto Clause.[2]

Rhines further argues the admission of victim impact testimony violated his right to due process.  This claim was waived in the district court:

> Mr. Rhines does not argue that the admission of victim impact testimony during the penalty phase violated his rights under the Eighth Amendment.  That was no longer the law on the day the murder was committed.  <u>Payne</u>.  Nor does he argue here that its admission violated South Dakota law. . . .

> What Mr. Rhines asserts here is that the admission of aggravation evidence during the penalty phase which would have been inadmissible on the day the murder was committed violates the *Ex Post Facto* Clause of the Constitution . . . .

─────────────────

[2]In <u>Nooner v. Norris,</u> 402 F.3d 801, 807 (8th Cir. 2005), we held that an Arkansas victim impact evidence statute did not violate the Ex Post Facto Clause because "victim impact evidence 'does not violate the ex post facto prohibition . . . because it neither changes the quantum of proof nor otherwise subverts the presumption of innocence,'" citing <u>Neill v. Gibson</u>, 278 F.3d 1044, 1053 (10th Cir. 2001).  Rhines argues <u>Nooner</u> is distinguishable because it did not involve an aggravating factor statute.  As the victim impact evidence in this case was not admitted under S.D.C.L. § 23A-27A-1, we need not consider this issue.

Petitioner's Response to State's Motion for Summary Judgment at 30, Rhines v. Young, No. Civ-5020-KES (D.S.D. 2014).  Moreover, this claim was never raised to the state courts and is therefore procedurally barred.  See, e.g., Hall v. Luebbers, 341 F.3d 706, 719-720 (8th Cir. 2003).

## D. Life Without Parole Jury Instruction.

During deliberations, the jury sent the trial judge a note:

> In order to award the proper punishment we need a clear p[er]spective of what "Life In Prison Without Parole" really means.  We know what the Death Penalty means, but we have no clue as to the reality of Life without Parole.
> The questions we have are as follows:
> (1) Will Mr. Rhines ever be placed in a minimum security prison or given work release.
> (2) Will Mr. Rhines be allowed to mix with the general inmate population.
> (3) Allowed to create a group of followers or admirers.
> (4) Will Mr. Rhines be allowed to discuss, describe or brag about his crime to other inmates, especially new and or young men jailed for lesser crimes (ex: drugs, DWI, assault, etc.).
> (5) Will Mr. Rhines be allowed to marry or have conjugal visits.
> (6) Will he be allowed to attend college.
> (7) Will Mr. Rhines be allowed to have or attain any of the common joys of life (ex: TV, radio, music, telephone, or hobbies and other activities allowing him distraction from his punishment).
> (8) Will Mr. Rhines be jailed alone or will he have a cellmate.
> (9) What sort of free time will Mr. Rhines have (what would his daily routine be)
> We are sorry, You Honor, if any of these questions are inappropriate but there seems to be a huge gulf between our two alternatives.  On one hand there is death and on the other hand what is Life in prison w/out parole.
> [Signed by each juror].

-21-

The court proposed a response: "Dear Jurors: I acknowledge your note asking questions about life imprisonment. All the information I can give you is set forth in the jury instructions." Rhines proposed that, in addition to the court's proposal, the response also state: "You are further instructed, however, that you may not base your decision on speculation or guesswork." The court rejected Rhines's proposal and submitted the response it initially proposed. On direct appeal, the Supreme Court of South Dakota rejected Rhines's contention that the trial court abused its discretion in refusing to give the proposed additional instruction. Rhines, 548 N.W.2d at 454.

In the state habeas proceeding, Rhines argued that failure "to raise in the direct appeal, the failure of the trial court to specifically answer the jury's question on prison life" was ineffective assistance of appellate counsel, basing this contention on Simmons v. South Carolina, 512 U.S. 154 (1994). In rejecting this contention, the Supreme Court of South Dakota explained that appellate counsel was not ineffective in failing to make a due process argument because Simmons is distinguishable. In Simmons, after the prosecution put the defendant's future dangerousness in issue, the Supreme Court held that "due process requires that the sentencing jury be informed that the defendant is parole ineligible." Rhines, 608 N.W.2d at 310, quoting Simmons, 512 U.S. at 156. By contrast, at Rhines's trial, future dangerousness was not expressly put in issue, and "the jury . . . was repeatedly told that life imprisonment meant life without parole, which is exactly what is required by Simmons." Id. at 311. Moreover, because day-to-day correctional decisions are within the discretion of the South Dakota Department of Corrections, if the trial judge had attempted to answer the jury's questions, "he could have said little more than, 'It depends.'" Id. The district court considered this issue at length and concluded that "the South Dakota Supreme Court's decision that Simmons did not apply was not contrary to or an unreasonable application of clearly established federal law."

On appeal, Rhines argues that the Supreme Court of South Dakota's decision was an unreasonable application of clearly established federal law because it ignored

-22-

"the key holding" of <u>Simmons</u> -- that it violates due process to impose the death penalty "on the basis of information which [defendant] had no opportunity to deny or explain." <u>Simmons</u>, 512 U.S. at 161, quoting <u>Gardner v. Florida</u>, 430 U.S. 349, 362 (1977). Though it addresses the Supreme Court of South Dakota's decision to distinguish <u>Simmons</u>, this argument was not made in the state habeas proceedings and may well be procedurally barred. But in any event, it is without merit. The jury's question did not implicate the <u>Simmons</u>/<u>Gardner</u> principle because the jury was told that life imprisonment meant life without parole; thus, the jury did not receive information favorable to the prosecution that Rhines could not deny or explain.

We agree with the district court that the South Dakota Supreme Court's decision rejecting the claim of appellate counsel IAC because <u>Simmons</u> did not apply was not contrary to or an unreasonable application of clearly established federal law.[3]

## E. Constitutionally Vague Aggravating Factor.

At the conclusion of the penalty phase, the jury was instructed that it must unanimously find at least one of the statutory aggravating circumstances in S.D.C.L. § 23A-27A-1 beyond a reasonable doubt; otherwise, "the only possible sentence for the Defendant is life imprisonment without parole." The jury found four aggravating circumstances -- the offense was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest; the offense was committed for the purpose of receiving money; the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture; and the offense was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of mind. § 23A-27A-1(3), (6), (9) (1992).

---

[3]Rhines further argues that the refusal to provide a curative instruction to prevent "rank speculation regarding life imprisonment without parole" violated the Eighth Amendment as construed in <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990). This claim was never raised to the state courts and is therefore procedurally barred.

-23-

On direct appeal, the Supreme Court of South Dakota agreed with Rhines that the depravity-of-mind statutory language is constitutionally overbroad and that the trial court's instructions did not "provide adequate guidance to the sentencer." Rhines, 548 N.W.2d at 449.  However, applying the Supreme Court's analysis in Zant v. Stephens, 462 U.S. 862 (1983), the Court concluded that South Dakota's capital sentencing scheme includes all the procedural safeguards emphasized in Zant and therefore, as in Zant, the unconstitutionality of one statutory aggravating factor did not invalidate Rhines's death sentence.  Id. 452-53.   In denying federal habeas relief, the district court held that the South Dakota Supreme Court's conclusion was not an unreasonable application of clearly established federal law.

On appeal, Rhines argues that the Supreme Court of South Dakota unreasonably applied federal law, because this case is analogous to Stringer v. Black, 503 U.S. 222 (1992), in which the Supreme Court held that a death sentence under Mississippi law was invalid when the jury had been instructed on an unconstitutionally vague aggravating circumstance.  Id. at 237.  In distinguishing Zant, which reviewed a Georgia death sentence, the Court in Stringer explained:

> With respect to the function of a state reviewing court in determining whether the sentence can be upheld despite the use of an improper aggravating factor, the difference between a weighing State and a nonweighing State is . . . one . . . of critical importance.  In a nonweighing State [like Georgia], so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty.

Id. at  231-32.  By contrast, under the law of Mississippi, a weighing State, "after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence."  Id. at 229.

-24-

Though the Supreme Court of South Dakota did not cite <u>Stringer</u>, it expressly considered the weighing-nonweighing distinction in concluding that <u>Zant</u> was the controlling federal precedent:  "our statutes do not require the jury to weigh aggravating circumstances against mitigating factors, and the jury was not instructed to consider the specific number of aggravating factors in deciding whether to render a death sentence."  548 N.W.2d at 453.  The trial court's jury instructions were consistent with this interpretation of the South Dakota statute:

> In your deliberations on whether an aggravating circumstance has been proven beyond a reasonable doubt, do not consider which penalty should be imposed. . . . In the event you find beyond a reasonable doubt one or more aggravating circumstances to exist, then you must determine which of two penalties shall be imposed on the Defendant: Life imprisonment without parole or death.

Citing <u>Brown v. Sanders</u>, 546 U.S. 212 (2006), Rhines argues that the South Dakota statute makes South Dakota a weighing State "because it limited the universe of potential aggravating factors to those that made the defendant eligible for the death penalty."  The Court in <u>Brown</u> modified its prior "weighing/nonweighing scheme." <u>Id.</u> at 219.  The test in <u>Stringer</u> was the controlling federal law when the Supreme Court of South Dakota ruled on this issue in 1996; therefore, <u>Stringer</u> and <u>Zant</u> control review of the state Court's application of clearly established federal law. <u>Stringer</u>, 503 U.S. at 227.  We agree with the district court that the state Court did not unreasonably apply this federal law when it decided that <u>Zant</u> was the controlling precedent for resolving this issue.  Moreover, we conclude this is even more clear if the state Court's ultimate decision -- that the unconstitutionality of the depravity-of-mind aggravating circumstance did not invalidate Rhines's death sentence -- is measured against the revised rule adopted in <u>Brown</u>:  "An invalidated sentencing factor . . . will render the sentence unconstitutional . . . *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances."  546 U.S. at 220.  Here, the jury found three valid aggravating

-25-

circumstances that clearly encompassed the facts and circumstances supporting its additional depravity-of-mind finding.

### III. Case No. 17-1060.

In Case No. 17-1060, Rhines applies for authorization to file a second or successive habeas petition arguing that "South Dakota's sentencing statute is likely unconstitutional" because, contrary to the U.S. Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), the statute "does not require that the jury find each fact necessary to impose a death sentence unanimously and beyond a reasonable doubt." See 28 U.S.C. § 2244(b)(3). We deny the Application. Leave to file a second or successive habeas petition may be granted if "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). "[A] new rule is not 'made retroactive' unless the Supreme Court holds it to be retroactive." Goodwin v. Steele, 814 F.3d 901, 904 (8th Cir. 2014), citing Tyler v. Cain, 533 U.S. 656, 663 (2001). The opinion in Hurst made no mention of retroactivity, and no subsequent Supreme Court decision has made Hurst retroactive. Moreover, even if Hurst is retroactive, it does not apply. Hurst held that "a jury, not a judge, [must] find each fact necessary to impose a sentence of death." 136 S. Ct. at 619. Here, the jury instructions and verdict form demonstrate that the jury unanimously found beyond a reasonable doubt three aggravating circumstances, the facts necessary to render Rhines eligible to be sentenced to death, and sentenced Rhines to death. The trial judge was required to impose the sentence recommended by the jury. S.D.C.L. § 23A-27-4 (1979).

In Case No. 16-3360, the judgment of the district court is affirmed. In Case No. 17-1060, we deny the Application To File Second or Successive Petition.

_____

-26-